(No. 37161)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ROBERT GIVENS, Plaintiff in Error.

*Opinion filed November 30, 1962.*

GERALD W. GETTY, Public Defender, of Chicago, JAMES J. DOHERTY and WILLIAM J. MORAN, Assistant Public Defenders, of Counsel,) for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and JOHN T. GALLAGHER and EDWIN J. BELZ, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

Defendant, Robert Givens, has prosecuted this writ of error to review the judgment of the criminal court of Cook County finding him guilty of murder in a trial without a jury, and sentencing him to the Illinois State Penitentiary for a term of not less than 14 nor more than 20 years.

The essential inquiry on this review is whether the homicide was committed by defendant in self-defense or in defense of habitation.

There are no material conflicts in the testimony of the witnesses with respect to the facts and sequence of events. The homicide occurred about 9 A.M. on December 9, 1961, just inside the door of defendant's small room on the second floor of a rooming-house at 812 West Maxwell Street in Chicago, where defendant had resided for some 18 or 20 years. He was 59 years old, of slight stature, weighing about 130 pounds, about 5 feet 9 inches tall, and had lost his right eye in a beating received some two years before. His left eye had impaired vision, and he could neither read nor write, having had only a few months of schooling in his lifetime.

According to defendant's testimony, he left his room on the second floor of the rooming-house and walked up to the men's washroom on the third floor. As he was coming down he observed Virgil Beavers, a well developed 35-year-

old Negro weighing about 170 pounds, arguing and scuffling with McGee, one of the roomers. Although defendant had seen Beavers two or three times before and knew that he had recently moved into the building, defendant didn't know Beavers's name and had never talked to him. Defendant walked by, for he "didn't want no part of him," but Beavers apparently followed defendant to his room, stood in the doorway, and prevented defendant from closing his door. As Beavers started toward defendant with his hands in his pockets, defendant told him, "Get out, I can't fight you, man, get out." When Beavers "kept on coming" toward him, defendant picked up a .22 caliber rifle, which he kept behind the door of his room, and fired one shot.

When asked during his interrogation by the assistant State's Attorney if Beavers had tried to hit him "or anything," defendant replied: "I'm telling you the truth, man. I don't know what that guy would have did to me, if I hadn't stopped him. I don't know what that guy would have did because he raised hell with McGee. He was standing in my door. I couldn't close my door."

After the shot, deceased whirled and fell half out of the room on his stomach. Defendant claims he pushed deceased out of the room and closed the door. He then walked to the Maxwell Street police station, approximately a block and a half away, and reported that he shot this man. After recounting the occurrence, he handed the police the key to his room.

Sergeant Devereaux, the detective to whom defendant reported the shooting, gave a summary from memory of that conversation with defendant, which was substantially in accord with defendant's testimony, except that Devereaux claimed defendant had said that deceased pounded on his door, and after defendant opened it, refused to go away despite defendant's demands that he get out. Defendant's statement to the assistant State's Attorney, made in Dever-

eaux's presence and admitted in evidence, was also substantially in accord with defendant's testimony.

Leroy Stanford, the caretaker of the rooming-house, who was called as a witness by both the People and the defendant, stated that about 9 A.M., while he was in bed, he heard a noise that sounded like a shot. When he opened the door shortly afterward, he saw Virgil Beavers on the floor about 4 feet from defendant's door and defendant was standing in the doorway with a rifle. Defendant put his rifle inside the room at Stanford's suggestion, and then immediately went down to the police station by himself.

Stanford further testified that he had lived in the building about 3 years, and that some 2 years before defendant "took a terrible beating over the head with an iron pipe," wielded by a roomer named Hogan, who had lived on the third floor. That beating occurred near the men's washroom, and Stanford had found defendant lying on the hall floor, covered with blood, with holes knocked in his forehead, and his eye knocked out. Stanford further stated that he knew defendant since 1948, and that his general reputation for being a peaceful, law-abiding citizen was good, as was his reputation for truth and veracity.

On the basis of substantially the foregoing evidence the trial judge concluded that under the terms of section 149 of division I of the Criminal Code (Ill. Rev. Stat. 1959, chap. 38, par. 367) defendant was guilty of murder, and imposed a sentence of imprisonment in the Illinois State Penitentiary for not less than 14 nor more than 20 years.

On this review of that judgment defendant argues essentially that the State did not prove that he was guilty of murder beyond a reasonable doubt, since the evidence establishes that the homicide was committed in self-defense and defense of his habitation, as provided in section 148 of division I of the Criminal Code. Ill. Rev. Stat. 1959, chap. 38, par. 366.

Under our Criminal Code, where a killing is proved,

as in the instant case, the burden of proving circumstances that justify or excuse the homicide devolves on the accused. (Ill. Rev. Stat. 1959, chap. 38, par. 373.) Defendant, contending that there was such justification here, relies on section 148 of the Code which provides, in substance, that to constitute a justification or excuse it must appear that it was in necessary self-defense, or in defense of habitation, property or person, against one who manifestly intends or endeavors by violence or surprise to commit a known felony, or in a violent manner to enter the habitation of another for the purpose of assaulting any person therein. The statute further specifies that a bare fear of any of these offenses is not sufficient to justify the killing, but that the circumstances must be sufficient to excite the fears of a reasonable person, and that "the party killing really acted under the influence of those fears, and not in a spirit of revenge." Ill. Rev. Stat. 1959, chap. 38, par. 366.

This court, in construing the Criminal Code, has held that in his own habitation a man may use all the force apparently necessary to repel an invasion of his home. (*People* v. *Eatman,* 405 Ill. 491.) Furthermore, one may resist with force an unlawful entry by one whose purpose is to assault or do violence to him, to the extent of taking the aggressor's life, even though the circumstances may not be such as to justify a belief that there was actual peril of life or great bodily harm. (*Hayner* v. *People,* 213 Ill. 142.) However, one is not warranted in taking the life of another who may approach his dwelling or trespass upon his premises without any offer of violence. *People* v. *Osborne,* 278 Ill. 104.

In adjudging defendant's conduct by these standards, it is evident that he did not shoot Beavers for the mere trespass on his premises, as did the defendant in the *Osborne* case, 278 Ill. 104, cited by the State. On the contrary, defendant's action in repelling this invasion of his room by

an unknown intruder whom he had merely seen three times previously, was motivated by fear of an assault, if not grave physical peril. That fear was based not only on the intruder's action in following defendant, invading his room, refusing to leave or say what he wanted, and advancing toward defendant, but on the fact that defendant had just seen the man scuffling with, and trying to "whip," another roomer. Moreover, the fear was enhanced by the physical disparity between the elderly defendant and the robust intruder. Since defendant was in no way physically able to repel the intruder by hand combat, his belief that shooting was the only way to protect himself and to stop decedent was, under these circumstances, not unreasonable. Defendant was not required to measure the precise amount of force he might use to repel that invasion of his room, or to protect his person from the reasonably anticipated violence. That defendant acted pursuant to the belief that the shooting was necessary and justified is borne out in some measure by his conduct in immediately reporting his action to the police and by his spontaneous explanation to them and to the assistant State's Attorney.

The substantial consistency of those accounts with his testimony, as well as the testimony of defendant's good reputation offered by a witness who knew him for 13 years and lived for over 3 years on the same premises, were also factors to be weighed in judging defendant's guilt.

In our judgment all the foregoing evidence established that the homicide was committed by defendant in his own habitation against one who unlawfully entered it and from whom defendant reasonably feared an assault, if not actual peril to his life. His action therefore could be deemed to be justified under section 148 of the Criminal Code (Ill. Rev. Stat. 1959, chap. 38, par. 366.) Inasmuch as the State failed to establish that defendant was guilty of murder beyond a reasonable doubt, the judgment and sentence entered here must be reversed.     *Judgment reversed.*