THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* PHILLIP D. TAYLOR, Defendant-Appellant.

(No. 70-137;

Fifth District—January 7, 1972.

Paul Bradley, of Defender Project, of Mt. Vernon, for appellant.

Robert H. Rice, State's Attorney, of Belleville, for People.

Mr. JUSTICE CREBS delivered the opinion of the court:

In a jury trial in the Circuit Court of St. Clair County the defendant, Phillip D. Taylor, was convicted of murder and sentenced to the penitentiary for not less than fourteen nor more than twenty-five years. In this appeal his principal contention is that he was not proven guilty of murder beyond a reasonable doubt because the killing was in self-defense and justifiable, or, in the alternative, that the evidence proved no graver offense than that of voluntary manslaughter.

On May 18, 1969, at about 1:30 O'clock in the morning the defendant shot and killed Tommie Lee Richardson, a bartender in a tavern in East St. Louis. All occurrence witnesses, both for the State and defendant, substantially agree in their testimony concerning the incident itself and the events leading up to it. It appears that defendant knew that several of his wife's relatives and friends were having a birthday party at the tavern and he went there to join them about 1:00 A.M. He had a conversation with his brother-in-law who was with the group and then sat down at the next table. The group was dancing and drinking together and later the defendant asked one of the girls to dance. She refused, stating that she was tired but maybe she would later. An argument developed and defendant and the girl began calling one another names. She finally picked up a beer bottle in a threatening manner and he pulled up his jacket displaying a gun in his waist band. He told her to "* * * (G)o ahead and hit me, that's what I want you to do." She immediately put the bottle back on the table, picked up her pocket book and left the tavern. All witnesses agreed that defendant did not touch his gun but merely let the girl see it. At this time the bartender was behind the bar and there was no evidence that he saw defendant's gun.

Lee Ann Winbush, testifying for the State, said that after the girl left, the bartender came over and told defendant that he did not want any trouble in the place; that defendant then sat down and did not say anything; that after a few more words were exchanged between the two of them she went to the bathroom and from there heard some scuffling and three shots. Also testifying for the State was Floyd Smith who said the bartender came from behind the bar with a gun in his hand; that he hit defendant on the shoulder with the gun knocking him into the corner; that the two of them were then scuffling on the floor with the bartender on top; that the next thing he heard was a shot and he saw nothing more, as he also ran to the bathroom with everyone else. On further direct ex-

amination this witness stated that the bartender had had an argument with his "old lady", that he was "kinda half mad" and had been drinking. He also stated that after the shooting when he came out from the bathroom the bartender was lying on the floor with his gun still in his hand.

Three days after the shooting defendant had his mother call the police, surrendered himself, and turned over his gun. Four spent shells from defendant's gun were found on the tavern floor but no evidence was presented as to whether the bartender's gun had been fired.

Three of the people at the birthday table testified for the defense. They repeated the stories of the State's witnesses that the bartender hit defendant with a gun, shoved him down into a corner, and that the two of them were scuffling with the bartender on top when they heard a shot and they too ran for the bathroom.

The defendant testified that the girl he argued with was his wife's cousin whom he had known for three years. He stated that he carried a gun for protection and that he considered it necessary to do so in that neighborhood after dark. When the girl left he said the bartender came over, called him a punk and a lot of other names and said he was not going to have any of that stuff around his place, and that then the bartender hit him across the eye and shoulder with the gun. He tusseled with the bartender as he tried to keep him from harming him further. They fell to the floor with the bartender on top still calling him names and saying he was going to kill him. Defendant finally got his own gun out and fired once to get the bartender "off me". He said he then got up, but so did the bartender and that the bartender continued to come after him as if he were not shot; that the defendant then shot twice into the floor but the bartender still came on so he shot him again. On cross-examination he stated he was not sure if the bartender fired his gun or not; that both of them were standing after the first shot and that he fired his fourth shot when the bartender was about two feet away. In response to a specific question defendant stated that he did not have a drink that night or any other night as he did not drink.

The State contends that these facts unquestionably prove defendant guilty of murder. It is argued that defendant entered the tavern in a belligerent manner, disturbed and argued with one woman, exposed a hand gun he was carrying, and that, based thereon, the bartender had a right to use such deadly force as was necessary to eject the defendant from the tavern. We cannot agree. There is no evidence whatsoever that defendant came into the tavern in a belligerent manner. To the contrary, he entered quite normally, had a friendly conversation with one of his wife's relatives at the birthday table and then sat down. When the girl refused his request to dance they did have an argument, and when

she threatened him with a bottle he displayed his gun which dissuaded her and caused her to leave. There was no other argument nor any boisterous activity with any other members of the party. According to the State's witness the defendant had sat down and was not saying anything when the bartender came out from behind the bar with his gun in hand. He did not ask the defendant to leave. Instead he hit him with his gun, knocked him to the floor, jumped on top of him, called him a lot of names, and, according to defendant, threatened to kill him. Such actions are not those of a concerned manager endeavoring to maintain order in his place of business. In fact, they are hardly understandable except in the light of the information offered by another of the State's witnesses that the bartender had been drinking, had had a fight with his wife and was "kinda half mad".

■■ The fact that defendant shot and killed a man does not necessarily mean that he is guilty of murder or even voluntary manslaughter, for he has a right to use a deadly weapon in self-defense with intent to kill, and yet not be guilty of either crime. (*People v. Smith*, 404 Ill. 350.) The test is whether he reasonably believed such force was necessary to prevent imminent death or great bodily harm to himself. (Ill. Rev. Stat. ch. 38, par. 7—1.) As stated in *People v. Motuzas*, 352 Ill. 340, one who is deliberately assaulted in a manner to make him reasonably apprehensive that his life may be taken or that he will suffer great bodily harm has the right, in self-defense, to deliberately kill his assailant.

■■ The State argues that since the last shot was fired by defendant when the bartender and he were both standing and only a short distance apart, it is absurd to suggest that defendant was acting in self-defense. The suggestion seems to be that defendant should have retreated or perhaps run and exposed his back to his advancing assailant who was armed and who, even in death, was still clutching his gun in his right hand. But retreat was not required, for if one who is not the first assailant is in a place where he has a lawful right to be and is put in apparent danger of his life or of suffering great bodily harm he need not attempt to escape but may lawfully stand his ground and meet force with force even to the taking of his assailant's life. *People v. Bush*, 414 Ill. 441; *People v. Durand*, 307 Ill. 611.

■■ We find that the killing in this case lacks the essentials requisite to the crime of murder, or even voluntary manslaughter, and that the verdict finding defendant guilty of murder and the judgment based thereon are contrary to the evidence. The testimony in this case shows that the bartender was the assailant; the defendant, being in a place where he had a lawful right to be and in apparent real danger of his life or of suffering great bodily harm, had a right to defend himself even to the extent of

taking his assailant's life. In view of the testimony on the question of self-defense we cannot say that defendant was proven guilty beyond a reasonable doubt, and thus the denial of defendant's motion for a directed verdict of acquittal was in error.

The judgment of the Circuit Court of St. Clair County is therefore reversed.

Judgment reversed.

MORAN, P. J., and EBERSPACHER, J., concur.