THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ALDRICH PEARSON, Defendant-Appellant.

First District (5th Division)    No. 62539

Opinion filed July 9, 1976.

James J. Doherty, Public Defender, of Chicago (James L. Rhodes and Suzanne M. Xinos, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Roger Horwitz, and James Meltreger, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Following a bench trial, defendant was convicted of voluntary manslaughter pursuant to section 9—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1971, ch. 38, par. 9—2) and sentenced to a term of two to six years. On appeal he contends the trial court erred in its finding of guilt, because defendant acted in self-defense when he killed Wilbert Gregory.

At trial the following evidence pertinent to this appeal was adduced.

*For the State*
  *Stance Strong*
He lived with his mother at 5417 South Prairie Avenue. On August 3, 1973, when he returned home at about noon he saw his cousin, the deceased, Wilbert Gregory there. After they talked about five minutes on the porch, they went downstairs and sat on the steps, where they continued to talk for another 10 minutes. Among other things they discussed defendant, who was Catherine Gregory's boy friend. Gregory told him he wanted to talk to defendant about taking money belonging to Catherine Gregory, his wife. Gregory did not threaten violence against defendant. While the two were talking, they heard a commotion and someone said, "Here comes Edgy" (defendant). Whereupon, Gregory headed toward the vacant lot next door. Shortly thereafter the witness followed Gregory to the lot. As he arrived, Gregory was already standing on the sidewalk at the front of the lot and defendant was five to ten feet from the alley at the rear of the lot. Defendant proceeded toward Gregory, who took two steps into the lot as if to meet him. Continuing toward Gregory, defendant pulled a gun and Gregory backed up a foot or two to the sidewalk. When defendant was 20 feet from Gregory, he stopped, said, "What you going to do now m——— f———?" fired one shot, and ran. Although he was within 10 feet of Gregory when he was shot, he did not hear Gregory make any threats against defendant. Only about three minutes elapsed between the time they left the stairs and the shooting. After Gregory was shot he put him in his car and took him to the hospital. He found no weapons on Gregory.

*For the defendant*
  *Catherine Gregory*
She was the estranged wife of the deceased. On the day in question Wilbert Gregory visited her at the home of her parents, 5403 South

Prairie. As he walked into the apartment, he dropped a big chain, approximately three feet in length with two locks attached to it, into her lap. After he played with the baby for about 15 minutes he walked back to her, picked up the chain, grabbed her and asked her to take him to defendant. He said he was going to hit him with the chain. But she did not go and he left. Within the next hour defendant came to the front door of the apartment. She told him Gregory was looking for him and that Gregory had threatened to hit him with the chain. He left her parents' apartment and walked through the vacant lot to the alley. Gregory, who was sitting outside on Strong's porch, then walked over to the vacant lot, stopping on the sidewalk. He began arguing with Gregory. She thinks Gregory was arguing back, but she is not sure, because she could not hear very well with all the commotion. Defendant walked up to Gregory and shot him. They were barely a foot apart and Gregory was standing on the sidewalk. There was nothing in Gregory's hand when he was shot.

*Defendant, on his own behalf*

Prior to the shooting he went to see Catherine Gregory at 5403 South Prairie. She met him at the door and told him Wilbert Gregory had just been there looking for him, threatening to hurt him. Instead of going inside, he proceeded around to the vacant lot in order to avoid Gregory. He was carrying a weapon because he had previously been jumped. He is 5'8" tall and weighs 155 lbs. As he walked to the back of the lot, he turned and saw Gregory. Calling out, he asked Gregory why he was looking for him. He was walking toward Gregory now. Gregory steadily walked toward him and said, "I am going to break your neck you little punk." Gregory then "charged" him. He pulled his gun and fired. When he pulled the trigger he was standing in the middle of the lot. He feared for his life. He was six or seven feet from Gregory when he shot him and Gregory had nothing in his hands. After shooting, he turned and ran home.

It was stipulated that Gregory died of a single wound inflicted by a bullet fired from defendant's gun and that Gregory was 6'5" tall and weighed 219 lbs.

Opinion

■■ Defendant's sole contention on appeal is that he shot Gregory in self-defense and thus the evidence fails to support his conviction beyond a reasonable doubt. He argues that under the circumstances it was reasonable for him to believe he was in imminent danger of great bodily harm and he was, therefore, justified in using deadly force to protect himself pursuant to section 7—1 of the Criminal Code of 1961. Ill. Rev. Stat. 1971, ch. 38, par. 7—1.

Whether defendant acted in self-defense or if not, whether the facts of

the assault constitute murder or manslaughter is a question to be determined by the trier of fact and that determination will not be disturbed on review unless the evidence is so improbable or unsatisfactory as to raise a reasonable doubt as to defendant's guilt. (*People v. Washington*, 27 Ill. 2d 104, 187 N.E.2d 739.) After reviewing the record we find ample evidence to support the finding of the trial court.

The record clearly shows defendant shot and killed an unarmed man. Both Strong and Catherine Gregory testified Gregory carried no weapon at the time of the shooting. What became of the chain Gregory had earlier is unknown, but that he did not have it with him at the time of the shooting is certain. More importantly, defendant admits he saw nothing in Gregory's hands when he drew his gun and fired. His admission belies defendant's assertion that deadly force was necessary to protect himself.

Defendant claims Gregory "charged" him thus necessitating the killing to save his own life. However, this is contrary to the testimony of Strong and Catherine Gregory. Both stated Gregory remained within a few feet of the sidewalk during the entire occurrence. Indeed, it appears it was defendant who may have pursued Gregory, walking at least halfway across a vacant lot toward him. While a discrepancy exists as to the distance between defendant and Gregory when the shot was fired, neither Strong nor Catherine Gregory recalls Gregory attacking defendant. Clearly, Gregory, who was unarmed and stationary, posed no imminent threat of serious harm to defendant.

Defendant argues that Gregory's threats of violence and sheer physical size caused him to fear for his life. However, threats alone do not justify the use of deadly force. (*People v. Golson*, 392 Ill. 252, 64 N.E.2d 462.) Likewise, the fear induced by Gregory's physical stature, while an element to be considered (see *People v. Givens*, 26 Ill. 2d 371, 186 N.E.2d 225) when viewed in light of the fact that Gregory did not attack defendant, did not justify the extreme action defendant took.

The cases defendant cites in support of his contentions are clearly distinguishable. In all three cases (*People v. Brumbeloe*, 97 Ill. App. 2d 370, 240 N.E.2d 150; *People v. Taylor*, 3 Ill. App. 3d 734, 279 N.E.2d 143 and *People v. McGraw*, 13 Ill. 2d 249, 149 N.E.2d 100) the defendants were physically attacked by their victims. As we said earlier, we find no evidence here that defendant was physically attacked.

For the foregoing reasons we do not find the evidence so unsatisfactory as to raise a reasonable doubt as to defendant's guilt.

The judgment of the trial court is affirmed.

Affirmed.

SULLIVAN and BARRETT, JJ., concur.