THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* IRENE MAROY, Defendant-Appellant.

First District (1st Division)    No. 77-1684

Opinion filed October 16, 1978.

Marshall Weinberg, of Reilley, Bell & Weinberg, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Joan S. Cherry, and Michael L. Closen, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Irene Maroy, defendant, was indicted for murder in violation of section 9—1(a)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 9—1(a)(1)). After a jury trial, defendant was convicted of voluntary manslaughter (Ill. Rev. Stat. 1973, ch. 38, par. 9—2(b)) and sentenced to two to nine years in the penitentiary. Defendant appeals, contending that she was not proved guilty of voluntary manslaughter beyond a reasonable doubt and the court erred in giving a voluntary manslaughter instruction.

Sedgewick McCoy Hall, a Chicago cab driver, testified for the State. On July 2, 1975, while he was driving his cab in the southeast part of Chicago, he picked up a fare at 71st Street and East End Avenue. He identified defendant as the fare. Defendant carried an infant, a paper shopping bag with handles and a purse. He drove her to 67th Street and Champlain Avenue. She left the cab and walked to the porch of a house. A few minutes later she left the house, accompanied by a man whom Hall later learned to be Michael Bryan. They walked toward the cab. The man and defendant were talking as they stood beside the cab. Hall sat in the driver's seat, looking out the right side window. The man had nothing in his hands. Hall could see the two from the neck to the waist. They were both swinging their arms. In one of her hands, defendant carried a knife, partially hidden by a scarf. She started slicing at Bryan and scratched his arm with the knife. Bryan did not strike defendant. Hall saw the scarf go to Bryan's chest and blood began to squirt from the upper part of his chest. When Bryan fell backward, Hall got out of the cab and went to the side where the man had fallen. Defendant said, "Oh, my God, what have I done." Defendant told the police that somebody had come around the corner and stabbed the man.

On cross-examination, Hall testified that when Bryan and defendant came near the cab they jostled each other. They wrestled and separated

three times. He first saw the knife at the time they began wrestling. Bryan walked toward defendant. Hall could not hear what they were saying. Their arms were raised. Then defendant stabbed Bryan. He did not hear what they were arguing about.

On redirect examination, Hall stated that he did not see the scarf until after Bryan and defendant made contact. During the jostling Bryan did not attack her, but he was trying to hold defendant's hands. Hall first saw the knife in defendant's hands.

Patricia Brown testified that on July 2, 1975, she stopped, pulled behind a taxi parked at the curb in the vicinity of 67th Street and Champlain Avenue and watched defendant and Bryan arguing. Defendant told Bryan not to come any closer to her. When Bryan took a step toward her, defendant thrust her right hand at the man's chest. Bryan fell to the ground. Brown saw a scarf on defendant's right hand.

On cross-examination, Brown stated that Bryan did not hit defendant before she stabbed him.

Nick Versetto, a Chicago police officer, testified for the State. While on duty July 2, 1975, he saw Michael Bryan lying face up at 618 East 67th Street. He saw that Bryan was dead and that there was blood on his chest. He spoke to defendant, who stated that while she was arguing with Bryan an unknown person came around the corner and stabbed Bryan. Defendant struggled to keep her purse. Versetto took it from her forcibly. Inside her purse he found a scarf wrapped around a knife.

The parties stipulated that the cause of Bryan's death was a knife wound in the chest.

Defendant testified that Michael Bryan was the father of her younger son. She went to see Bryan to ask him to give her money and food for their son. Bryan offered to give her a check, but she refused it. He said he would not give her anything. They started fighting; Michael began to choke her with her scarf. Bryan threw an envelope, which contained the keys to the apartment, and a knife onto the back seat of the cab. She grabbed the knife from the seat. Bryan would not let her enter the taxi. Defendant struck him with the knife. He hit her in the head. When she dropped the knife, Bryan picked it up and dropped it. When he dropped it, defendant grabbed it. Bryan came toward her and she stabbed him. Defendant did not mean to kill him. She tried to help him after the stabbing. The story defendant told the police officer, that someone else stabbed Bryan, was because she was afraid. A couple of weeks before the killing, Bryan had beat her so badly that she needed stitches to close the wounds. She stabbed Bryan to defend herself.

On cross-examination, defendant stated that Bryan punched and choked her when they were only a couple of feet from the cab. Bryan took the envelope with the knife from his waistband. He had not threatened her with the knife.

Allen Boness, a Chicago police officer, testified that on June 15, 1975, he arrested Michael Bryan for disorderly conduct on the complaint of the defendant. On cross-examination, the officer stated that Irene Maroy had no visible injuries on the day he arrested Michael Bryan. She made no complaint concerning violence by Bryan.

Dr. Teresito Arcillas testified that on June 15, 1975, he treated defendant for lacerations to the head. On cross-examination, he stated that her wounds were superficial. She was released from the emergency room after he treated her.

In rebuttal, Michael Kane, an assistant State's Attorney for Cook County, testified that when he interviewed defendant on July 2, 1975, she said nothing about being struck by Michael Bryan during the struggle, but she did say that Bryan had grabbed her arm.

■■■ Defendant contends that she was acting in her own defense at the time she stabbed Bryan and that her belief that she must defend herself was reasonable. We disagree. Defendant was convicted of voluntary manslaughter on the ground that her belief that the homicide was necessary for her protection was unreasonable. The reasonableness of defendant's belief is a question of fact. (*People v. Pearson* (1976), 40 Ill. App. 3d 315, 318, 352 N.E.2d 240.) We will reverse the judgment of the trier of fact only if the evidence is so improbable as to raise a reasonable doubt of defendant's guilt. (*People v. Diaz* (1976), 38 Ill. App. 3d 447, 453, 348 N.E.2d 199.) On this record, we find that defendant could not reasonably believe that the force she used was necessary to prevent imminent death or great bodily harm to herself. She alone was armed. The physical disparity between defendant and Bryan was not great. Furthermore, only defendant testified that Bryan struck and choked her; the disinterested witnesses testified that Bryan did not.

● 3 Defendant also contends that the trial court should not have instructed the jury on the issue of voluntary manslaughter. This contention is clearly without merit. A trial court in a murder prosecution is justified in instructing the jury on voluntary manslaughter where there is any evidence that the defendant was guilty of voluntary manslaughter. (*People v. Lewis* (1977), 51 Ill. App. 3d 109, 117, 366 N.E.2d 446; *People v. Sykes* (1977), 45 Ill. App. 3d 674, 678, 359 N.E.2d 897.) Here the evidence was sufficient to convict defendant of voluntary manslaughter beyond a reasonable doubt. The trial court did not err in instructing the jury on voluntary manslaughter.

The judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

GOLDBERG, P. J., and BUCKLEY, J., concur.