No. 86-584

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

STATE OF MONTANA,

       Plaintiff and Respondent,

  -vs-

JAMES BINGMAN,

       Defendant and Appellant.

---

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Joseph B. Gary, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Larry Jent, Bozeman, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Clay R. Smith, Asst. Atty. General, Helena
        A. Michael Salvagni, County Attorney, Bozeman, Montana
        Marty Lambert, Deputy County Attorey, Bozeman

---

Submitted on Briefs: Aug. 6, 1987

Decided: November 5, 1987

Filed: NOV 5 - 1987

_Ethel M. Harrison_
Clerk

Mr. Justice William E. Hunt, Sr. delivered the Opinion of the Court.

This is an appeal from the District Court, Eighteenth Judicial District, Gallatin County. Appellant was convicted in the District Court of one count of felony assault, § 45-5-202(2), MCA, and one count of witness tampering, § 45-7-206, MCA. We affirm.

Defendant Bingman raises four issues on appeal:

1. Did the trial court err in granting the State's motion in limine to exclude defendant's expert witness' testimony that because of intoxication, defendant could not form the requisite intent that is an element of the crime of witness tampering?

2. Did the trial court err in granting the State's motion to consolidate the charges of witness tampering and assault in the same trial?

3. Did the trial court fail to properly instruct the jury on the law of self-defense as it concerns the defendant's duty to retreat?

4. Did the trial court err in designating the defendant a dangerous offender?

On March 11, 1985, defendant Bingman was tending bar at Mickee's Bar in Belgrade. Tony Wagner arrived at the bar at approximately 11:00 p.m. and began drinking whiskey. At one point the defendant asked Wagner to remove from the premises a gun he had brought with him. He did so immediately and returned to the bar. There is some indication that Wagner became belligerent and difficult sometime later.

The events following are somewhat unclear. The defendant testified that he asked Wagner to go back to the office with him because he had begun playing with a knife and

- 2 -

threatening the customers. Wagner denied that he threatened anyone. He stated that it was the defendant who had been talking about beating up another man who had a reputation as a "bad man." Wagner testified that he told defendant he was a "bad man" and he'd have to fight Wagner, too, whereupon the defendant took him back to the office so they could settle it like gentlemen. Defendant Bingman and Wagner each claim the other threw the first punch starting the fight that gave Wagner a broken nose; facial contusions and lacerations; various bruises; and a split open head. Bingman suffered only a slight reddish swelling on his face. Wagner does not remember what occurred but there is evidence that Bingman struck him with a pool cue and also punched him four or five times in the face with fists adorned with several jagged rings.

The police were called and Wagner was arrested for detoxification so that he could be taken to a hospital for treatment. The defendant was arrested for assault.

The charge of witness tampering was based on events that occurred April 8, 1985. The defendant, out on bond, encountered Wagner in The Friendly Tavern in Belgrade. Testimony indicates Bingman offered Wagner a party, $1,000, a motorcycle and a trip out of town if he would promise to forego testifying to the assault. Wagner refused. The defendant was charged with witness tampering on a separate information.

The State made a motion to consolidate the two causes pursuant to § 46-11-404(1), MCA. Judge Gary, who had been presiding over the assault charge, granted the motion to consolidate the charges in one trial.

Issue I.

Appellant first takes issue with the trial court's decision to exclude the testimony of appellant's expert

- 3 -

witness, Dr. Kurtz, to show that defendant was under the influence of the drug Stadol at the time he committed the witness tampering. Appellant argues that this evidence would go directly to the defense of intoxication which prevented him from forming the requisite mental state. See § 45-2-203, MCA, (1985). It is unclear from the record what the substance of Dr. Kurtz's testimony would have been. We find compelling the State's argument that no offer of proof was made pursuant to Rule 103 of the Montana Rules of Evidence. Although the record does indicate the general nature of the intended direct examination, we can only guess what Dr. Kurtz's responses would have been. Generally, there can be no reversible error when the court cannot ascertain the evidence excluded by the granting of a motion in limine. Runkle v. Burlington Northern (1980), 188 Mont. 286, 292, 613 P.2d 982, 987. See also State v. Hall (1979), 183 Mont. 511, 515, 600 P.2d 1180, 1182-83. There may be an exception to this rule, however, when the offer of evidence is refused on substantive grounds rather than evidentiary grounds. State v. Bay (Ariz. 1986), 722 P.2d 280, 283; Jones v. Pak-Mor Mfg. Co. (Ariz. 1985), 700 P.2d 819, 827; State v. Kaiser (Ariz. 1973), 508 P.2d 74, 76.

In Bay, the Arizona Supreme Court held that because the question of whether the defense of insanity may be established solely by lay testimony was a question of substantive law, appellate review of an order denying expert testimony was permitted. Bay, 722 P.2d at 283-84. This is directly analogous to the instant case. The trial court determined that an expert witnesses could only testify to his or her personal knowledge of a particular incident of intoxication. Since Dr. Kurtz had not been present during the witness tampering incident he could not testify. The question becomes whether intoxication can be established

solely by lay testimony. Accordingly, this falls within the exception and we will review this issue.

This Court has pointed out that intoxication is not a defense, but merely a fact the jury may consider in determining the mental state of the defendant. State v. Ostwald (1979), 180 Mont. 530, 536, 591 P.2d 646, 650. But for the purposes of our discussion and analysis, we will accept defendant's claim that his defense is not that of a mental disease or defect but purely that of gross intoxication at the time of committing the crime so as to negate the element of specific intent. Section 45-2-203, MCA, (1985) provides:

> A person who is in an intoxicated or drugged condition is criminally responsible for conduct unless such condition is involuntarily produced and deprives him of his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. An intoxicated or drugged condition may be taken into consideration in determining the existence of a mental state which is an element of the offense.

It is the second sentence that is pertinent to this discussion. (As an aside, we note that this statute has been amended to preclude voluntary intoxication as a defense. Section 45-2-203, MCA, (as amended 1987).) The sole issue, then, is whether the defense of intoxication may be established solely by lay testimony. We hold that it may.

Expert testimony is not generally probative in a case where the intoxication does not rise to the defense of mental disease or defect. Unless the expert had personal knowledge of the incident he could not testify to defendant's intoxication at the time of the commission of the charged offense. State v. Ostwald (1979), 180 Mont. 530, 536, 591 P.2d 646, 649. See State v. Gray (Mont. 1983), 659 P.2d 255, 257, 40 St.Rep. 199, 202 (graphoanalyst's testimony

- 5 -

irrelevant because she was unable to testify to mental state of defendant at time of commission of crime). Further, expert testimony is not required to establish the intoxication defense. Ostwald, 591 P.2d at 650.

The defendant argues that if a person is so intoxicated that he cannot control his spoken words it has a direct bearing on whether he can form the requisite mental state. While this may contain some truth, an expert may not testify whether the defendant has the ability to conform his conduct to the requirements of the law. State v. Peavler (1981), 195 Mont. 379, 382, 636 P.2d 270, 271. See also § 46-14-213(2), MCA, (1985). Peavler involved the defense of alcoholism that rose to mental defect or disease; the instant case involves a defense based on a particular incident of intoxication. But for the purposes of the content of expert testimony we make no distinction. It would be inconsistent to disallow such testimony regarding conduct in cases where intoxication rose to mental defect or disease but allow it where a single incident of intoxication was alleged purely to negate specific intent.

Several witnesses, including the victim, testified to the issue of Bingman's intoxication at the time of his conversation in the Friendly Tavern. His girlfriend testified to witnessing him pass out on and off in the car on the way to the tavern and to witnessing him taking several shots of Stadol throughout the day and evening. The effects of the Stadol were described by both the defendant and his girlfriend. Even the victim said, "He [the defendant] looked to be drunk."

This testimony amply supports defendant's defense. He was not prevented from presenting adequate evidence concerning his intoxication. The trial judge did not abuse

his discretion in granting the State's motion in limine to exclude Dr. Kurtz's testimony.

Issue II.

Appellant's next point of contention presents an issue of first impression in this jurisdiction. This case originated as two charges made by two separate informations. The two charges, felony assault and witness tampering, were consolidated for trial on the State's motion. Appellant argues that because the two causes were filed in different departments of the Eighteenth Judicial District, they were improperly joined and, as such, highly prejudicial. Section 46-11-404, MCA, (1985) reads in pertinent part:

> (1) An indictment, information, or complaint may charge two or more different offenses connected together in their commission, different statements of the same offense, or two or more different offenses of the same class under separate counts. If two or more indictments, informations, or complaints are filed in such cases in the same court, the court may order them to be consolidated.
>
> . . .
>
> (4) If it appears that a defendant or the state is prejudiced by a joinder of related prosecutions or defendants in a single charge or by joinder of separate charges or defendants for trial, the court may order separate trials, grant a severance of defendants, or provide any other relief as justice may require.

Appellant's argument that the charges were not brought in the same court because they were brought in different departments of the Eighteenth Judicial District lacks merit. The division of multi-judge districts does not create multiple courts. The statutory language is clear.

> (2) The judges elected or appointed to hold office in each judicial district having more than one judge must divide the court into departments, prescribe the order of business, and make rules for

> the government of such court. Each department
> shall be numbered, and each judge shall be assigned
> to one of such numbered departments. (Emphasis
> supplied.)

Section 3-5-403(2), MCA, (1985).

The Eighteenth Judicial District is only one court in which both charges were brought.

Appellant also argues that the two charges were improperly joined because they are not sufficiently "connected together in their commission." Section 46-11-404(1), MCA, (1985). This is an issue of first impression not yet addressed by this Court. Since Montana's joinder statute is similar to Rules 8 and 14 of the Federal Rules of Criminal Procedure, we will take some guidance from federal law and other jurisdictions with similar statutes. First, we must determine if joinder was proper under § 46-11-404(1). The Fifth Circuit was held that counts of tax fraud and witness tampering are "two or more transactions connected together." United States v. Scott (5th Cir. 1981), 659 F.2d 585, 589. In that case, the court reasoned that the defendant's attempted intimidation of a witness was for the sole purpose of escaping criminal liability on the tax counts. There was, then, a direct relationship between the two counts. 659 F.2d at 589. We also find two cases from Kansas very persuasive.

In State v. Moore (Kan. 1979), 602 P.2d 1359, the Kansas Supreme Court held that counts of aggravated robbery and kidnapping were "connected together" with the charge of corruptively influencing a witness and therefore were properly joined. The Kansas statute reads as follows:

> Two or more crimes may be charged against a
> defendant in the same complaint, information or
> indictment in a separate count for each crime if
> the crimes charged,. . . are of the same or similar
> character or are based on the same act or

> transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

Kan. Stat. Ann. § 22-3202 (1981).

The Kansas court held that there could be joinder of two informations against a single defendant if the crime could have been joined in a single information. Moore, 602 P.2d at 1361-62. The Kansas court reasoned that the charges were connected together because the robbery and kidnapping charges "precipitated" the corruptly-influencing-a-witness charge. This reasoning was also used to hold that joinder of aggravated assault and a subsequent attempted murder was proper. State v. Pondexter (Kan. 1983), 671 P.2d 539, 547. The attempted murder was an effort to prevent the victim of an earlier aggravated assault from testifying. Reasoned the court, "Clearly, the crimes charged in the earlier action precipitated the [attempted murder.]" Pondexter, 671 P.2d at 547.

Several federal courts have held joinder was proper in cases where the second charge is precipitated by a previous charge. See United States v. Ritch (1st Cir. 1978), 583 F.2d 1179, 1181 (charge of bail-jumping or escape is sufficiently connected with previous crime if motive was to avoid prosecution and stems directly from the initial charge); Williams v. United States (9th Cir. 1959), 265 F.2d 214, 216 (obstruction of justice charge was properly joined with charge of statutory rape when object was to affect victim's testimony concerning rape charge).

This analysis is easily applied in the instant case. Bingman clearly was attempting to avoid criminal prosecution when he offered Wagner a party, a trip out of town, $1,000 and a motorcycle. The assault charge provides a motive for

- 9 -

and precipitates the tampering charge. We hold that the two charges were properly joined.

Defendant argues that even if there was proper joinder under § 46-11-404(1), he was prejudiced by such joinder. The standard for analyzing prejudicial joinder is set out in State v. Campbell (1980), 189 Mont. 107, 615 P.2d 190.

> Determining whether there has been prejudicial joinder involves weighing the prejudice incurred by the defendant because of a joint trial against the judicial economy resulting from a joint trial. This balancing process is left to the sound discretion of the trial judge. Absent a showing of abuse of that discretion, an appellate court should not substitute its judgment for that of the trial court.

Campbell, 615 P.2d at 198.

Interests of judicial economy greatly encourage joint trials. Campbell, 615 P.2d at 198. Further, the burden is on the defendant to show prejudice. State v. Orsborn (1976), 170 Mont. 480, 489, 555 P.2d 509, 515.

This Court has recognized three distinct types of prejudice that may result from joinder of charges against a single defendant.

> The first kind of prejudice results when the jury considers a person facing multiple charges to be a bad man and tends to accumulate evidence against him until it finds him guilty of something. The second type of prejudice manifests itself when proof of guilt on the first count in an information is used to convict the defendant of a second count even though the proof would be inadmissible at a separate trial on the second count. The third kind of prejudice occurs when the defendant wishes to testify on his own behalf on one charge but not on another.

Campbell, 615 P.2d at 198.

Appellant argues that the joining of the assault and witness tampering charges caused the jury to infer a criminal

- 10 -

disposition on the part of the defendant or that he was a "bad man." This is rarely sufficient to warrant severance. Campbell, 615 P.2d at 198; Orsborn, 555 P.2d at 515. Appellant argues that this kind of prejudice was also compounded by the trial judge's apparent confusion over the various defenses presented by the defendant and that the jury would likewise be confused. It has been held that prejudicial error does not occur simply because the defendant had separate and distinct defenses to two different counts. Orsborn, 555 P.2d at 514. Similarly, we find no prejudice of this type. Appellant also makes the argument that the jury obviously used evidence of the witness tampering charge to convict the defendant of assault. The record shows no misuse of the evidence.

Evidence of the assault charge would be admissible as showing motive in a trial on the witness tampering charge. Rule 404(b), M.R.Evid. Thus, the second type of prejudice is not present here. We do not find the defendant's arguments persuasive.

The third type of prejudice set forth in Campbell is not at issue in this case. We hold that joinder was proper.

Issue III.

Appellant next argues that Judge Gary incorrectly instructed the jury on the law of self-defense. He presents several objections to court's instructions nos. 20, 21 and 22. We cannot pass on the merits of his objections, however, because the defendant failed to object to them at trial and thus did not reserve the issue for appeal. State v. Watson (Mont. 1984), 686 P.2d 879, 886, 41 St.Rep. 1452, 1460.

It appears that appellant also objects to the refusal of his proposed instruction no. 10.

INSTRUCTION NO. 10

- 11 -

It is the law of this State that when a person is in his place of business or work and is not the aggressor, and is assaulted by another, he may, without any obligation on his part to retreat, repell [sic] force by force, whether to protect himself or others who may be present.

It is not error for a trial court to refuse to give a requested instruction if other instructions given adequately cover the rejected instruction's legal theory. State v. Lagge (1964), 143 Mont. 289, 295, 388 P.2d 792, 795. Nor must a trial court give repetitious instructions or instruct "on every nuance" of a defense theory. State v. Graves (Mont. 1981), 622 P.2d 203, 210, 38 St.Rep. 9, 16.

The thrust of the appellant's argument is that the court's other instructions required that the defendant retreat before use of force is justified, and that they assumed the defendant was the aggressor. These arguments are meritless. It is the law in Montana that the defense of justifiable force is not available to an aggressor unless he has withdrawn from the conflict and has already indicated to his assailant his desire to withdraw. Section 45-3-105, MCA, (1985). Retreat is not required if the defendant is not the aggressor. People v. Taylor (Ill.App. 1972), 279 N.E.2d 143, 145; People v. Martinez (Ill.App. 1972), 283 N.E.2d 268, 271. Section 45-3-102, MCA, (1985); § 45-3-105, MCA, (1985).

The court's instructions nos. 20 and 21 are direct quotes from §§ 45-3-102 and 45-3-105, MCA. We fail to see how they misstated the law or misled the jury in any way. Instruction no. 21 further delineates the unavailability of self-defense to an aggressor. These instructions were properly given in light of conflicting testimony regarding who threw the first punch. State v. Bashor (1980), 188 Mont. 397, 426, 614 P.2d 470, 486. Nowhere is it assumed that the defendant was the aggressor.

Defendant's instruction no. 10 adds nothing to the other instructions given by the court delineating the theory of self-defense. The given instructions do not specifically preclude persons assaulted in their place of business from benefitting from the defense of justifiable force. Nor do they require retreat of anyone who is not the aggressor. If the given instructions as a whole properly tender the case to the jury, there is no reversible error. State v. Reiner (1978), 179 Mont. 239, 244, 587 P.2d 950, 953-54. The given instructions properly state the law and the giving of defendant's proposed instruction would be repetitious.

Issue IV.

Appellant lastly contends that the District Court erred in designating Bingman a dangerous offender.

Under § 46-18-404, MCA, the sentencing court must designate a defendant as nondangerous if:

> (a) during the 5 years preceding the commission of the offense for which the offender is being sentenced, the offender was neither convicted of nor incarcerated for an offense committed in this state or any other jurisdiction for which a sentence to a term of imprisonment in excess of 1 year could have been imposed; and

> (b) the court has determined, based on any presentence report and the evidence presented at the trial and the sentencing hearing, that the offender does not represent a substantial danger to other persons or society.

If an offender is designated as dangerous, the sentencing court must articulate its reasons. State v. Camitsch (Mont. 1981), 626 P.2d 1250, 1258, 38 St.Rep. 563, 573; Matter of McFadden (1980), 185 Mont. 220, 222, 605 P.2d 599, 600.

- 13 -

On September 22, 1986, appellant was found to be a dangerous offender. The trial court gave extensive reasons for its designation.

> I'd like to state that since my time on the bench of seven years, that this is the most vicious beating that I've ever encountered, and obviously, you have no respect for the law whatsoever.. . . You go out and attempt to tamper witness and the jury convicted you, and I believe the jury was right. I believe the jury was right on the conviction of the deadly weapon.
>
> Luckily you didn't kill that man. He was intoxicated, because you testified that he was helpless. You beat him in the office and you beat him in the kitchen, and it was the most vicious thing I've seen since I've been on the bench, and you obviously have shown by your conduct that you don't care about the law. You don't care about other citizens. You only care about James Bingman, your booze and your drugs and we'll give you an opportunity to dry out in the penitentiary.

Appellant contends that the trial court improperly based its determination on an constitutionally infirm conviction obtained in 1973 without benefit of counsel. It is true that the sentencing court cannot rely upon unconstitutional convictions. State v. Herrera (1982), 197 Mont. 462, 468, 643 P.2d 588, 592. It is also true that the defendant bears the burden of challenging matters contained in the presentence report. State v. Smith (Mont. 1985), 705 P.2d 1087, 1092, 42 St.Rep. 463, 468. The only proof the defendant offered was his own self-serving testimony that he was not represented by counsel.

Appellant also contends the presentence report contains hearsay and inaccuracies. Hearsay can be properly considered in sentencing. State v. D.B.S. (Mont. 1985), 700 P.2d 630, 639, 42 St.Rep. 770, 780-81. All inaccuracies were brought to the court's attention during the presentencing hearing.

- 14 -

The trial court did not appear to rely on any particular offense or incident but instead emphasized the brutality of the assault, the subsequent witness tampering and a general inability to conform to the law. Even without the questionable presentence report incidents, there is substantial support for the dangerous offender designation. The trial court did not abuse its discretion.

The judgment of the District Court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices