No. 14745

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

DONALD D. HALL,

Defendant and Appellant.

Appeal from:  District Court of the Fourth Judicial District,
Honorable Jack L. Green, Judge presiding.

Counsel of Record:

For Appellant:

Morales, Volinkaty and Harr, Missoula, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Robert L. Deschamps, III, County Attorney, Missoula, Montana

Submitted on briefs: August 13, 1979

Decided: OCT - 9 1979

Filed: OCT - 9 1979

_Thomas J. Kearney_
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Defendant Donald D. Hall was convicted of two counts of aggravated assault on his two-year old stepson following a jury trial in the District Court of Missoula County. He appeals from the judgment of conviction.

Defendant and the child's mother, Cathy, were married in June, 1977, following the death of the child's father. On August 21, 1977, just prior to 5:00 p.m. Cathy Hall left home to pick up some chicken for dinner and was gone about 20 minutes. Defendant and the child were home alone. On her return Cathy asked defendant where the child was. Defendant replied that the child was tired and wanted to lie down. Cathy went downstairs but was unable to arouse the child who seemed unconscious. Cathy and defendant took the child to the emergency room of the Missoula Community Hospital. While there, Cathy asked defendant how the injuries occurred. Defendant said the child was riding his new 19" tricycle, tipped over on it, and hit the wall.

The same story was given by both parents to Dr. Henry Gary, a neurological specialist who inquired in order to properly treat the child. From the facts obtained from the parents and his medical findings, Dr. Gary diagnosed the child as having a subdural hematoma and as being a battered child. Dr. Gary testified it was highly unlikely the injury could have occurred as defendant claimed, as defendant's story did not coincide with his medical finding.

Because of Dr. Gary's diagnosis of child abuse, the Montana Department of Social and Rehabilitation Services was contacted and social worker McCluskie assigned to the case. McCluskie spoke to defendant and his wife concerning the incident and was given the same explanation. Dr. Daniel Harper, a Missoula pediatrician and an expert in child abuse, was called in and spoke to the parents.

He likewise concluded it was a case of child abuse.

The second incident occurred on October 30, 1977. Again Cathy Hall was temporarily away from home and the child was in defendant's care. Upon returning and finding no one home, she immediately drove to the Missoula Community Hospital where defendant told her he had been flipping the child in the air above a bed and that the child's leg had been broken. The same explanation was given by defendant and his wife to Dr. Steven Wisner, the pediatrician on call at the hospital. Dr. Wisner found that the child had a long spiral fracture of the left femur and other unexplained bruises, including bruises on the ears. Dr. Wisner determined it was highly unlikely that the fracture of the child's femur could have occurred in the manner indicated. His diagnosis was "unexplained trauma" which was reported as suspected child abuse.

Cathy called social worker McCluskie to the emergency room where defendant repeated the "flipping" story. Dr. Robert Cunningham, an orthopedic specialist who was called in, testified that defendant's explanation of how the child's injury occurred was highly unlikely because of the significant force that would have to be applied to cause such a break. Dr. David Jacobsen, another orthopedic specialist who treated the child after the emergency room treatment, testified it was unlikely the injury occurred as defendant related.

Police were not called in until Dr. Wisner called them. Detective Scott Graham advised both Cathy and defendant of their Miranda rights at the hospital, inquired how the incident occurred, and both parents repeated the explanation previously given the doctors.

An information charging defendant with two counts of aggravated assault was filed on March 2, 1978. Defendant pleaded not guilty and trial was set for May 1. Defendant waived his right

to a speedy trial and obtained a continuance of his trial until the fall jury term. Eight days before the trial date of October 2 defendant filed a motion to suppress all statements and admissions made by him to his wife Cathy, Dr. Gary, Dr. Wisner, social worker McCluskie, and to any other persons involved in the criminal investigation. Four days later defendant filed a brief in support of his motion to suppress. The District Court denied the motion. The motion was renewed during the course of trial and again denied.

Defendant also moved to separate the two counts prior to trial. The motion was subsequently withdrawn. Trial proceeded and the jury returned a verdict of guilty on both counts. Judgment was entered and defendant was sentenced to 10 years on each count to be served concurrently, and the sentence was suspended. Defendant has appealed from the judgment of conviction.

Defendant raises three specifications of error:

(1) Denial of his motion to suppress.

(2) Refusal to permit him to introduce exculpatory, rehabilitative and impeaching evidence from a civil proceeding under the Abused, Dependent and Neglected Child Act.

(3) Denial of his motion to try the two counts separately.

We hold that the District Court's denial of his motion to suppress was proper on two grounds: (1) the motion was untimely, and (2) it was correctly denied on the merits.

Defendant's motion to suppress was untimely as it was not made until 8 days before trial. The applicable statute requires at least 10 days notice. Section 46-13-301, MCA. Here the defendant waited over 7 months after he was charged to file his motion and then filed it only 8 days prior to trial.

The thrust of defendant's argument is that his statements and admissions were procured by persons acting as alter egos of law enforcement under the guise of civil proceedings relating to

dependent, neglected and abused children and then using this information to prosecute him criminally. He claims that this subjects his statements and admissions to exclusion as violating his constitutional right against self-incrimination.

Defendant's motion to suppress was properly denied on the merits. The record shows that the statements to his wife Cathy, Dr. Gary, Dr. Wisner and social worker McCluskie were voluntarily given by him. Miranda warnings and safeguards do not apply to these statements and admissions because he was not a criminal suspect in police custody at the time the statements and admissions were made. See Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L Ed 2d 694; State v. Johnson (1978), ____Mont.____, 580 P.2d 1387, 35 St.Rep. 952; State v. Hallam (1978), ____Mont.____, 575 P.2d 55, 35 St.Rep. 181. Contrary to defendant's claim, neither the doctors nor the social worker were law enforcement agents nor was defendant in custody within the purview of Miranda. See Oregon v. Mathiason (1977), 429 U.S. 492, 97 S.Ct. 711, 50 L Ed 2d 714. Clearly, defendant's wife Cathy was not a law enforcement agent. The statements to Detective Graham were made after the Miranda warning was given.

Defendant contends that the statements he made violated his right of privacy guaranteed by Art. II, Sec. 10, 1972 Mont. Const. The statements were freely and voluntarily given. There is no element of surreptitious obtaining of the information or securing information after consulting law enforcement officers. Cf. State v. Coburn (1974), 165 Mont. 488, 530 P.2d 442, and State v. Brecht (1971), 157 Mont. 264, 485 P.2d 47. Additionally, constitutional provisions on right of privacy permit its invasion upon a showing of a compelling state interest. That compelling state interest is clearly shown in child abuse cases by the declaration of policy contained in section 41-3-101, MCA.

Defendant's second specification of error relates to the District Court's sustaining objections to evidence he sought to introduce that he claims is exculpatory, rehabilitating and impeaches testimony offered by the State. He refers to an attempt to impeach a state's witness by prior inconsistent statements and his attempt to elicit from the child victim's grandmother statements made to her by the child victim. Defendant does not tell us nor does the record disclose the nature of the alleged impeaching testimony or the child victim's statements to his grandmother. No offer of proof was made. Absent this, we have no basis for review. Rule 103(a)(2), Mont.R.Evid.

The final specification of error is the denial of defendant's motion to try each of the two counts separately. The minutes of the District Court show that this motion was withdrawn in the Court's chambers immediately prior to trial. This specification of error is frivolous.

We have examined the other authorities cited by defendant in his brief. We have no quarrel with these authorities. They simply do not apply under the facts of this case. An extended discussion of these authorities in this opinion would serve no useful purpose nor change the result in this case.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices