No. 81-564

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

STATE OF MONTANA,

Plaintiff and Respondent,

vs.

GORDON HART,

Defendant and Appellant.

Appeal from: District Court of the Fourth Judicial District,
In and for the County of Lake
Hon. R. D. McPhillips, Judge presiding.

Counsel of Record:

For Appellant:

K. M. Bridenstine, Polson, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Richard P. Heinz, County Attorney, Polson, Montana

Submitted on briefs: May 27, 1982

Decided: September 3, 1982

Filed: SEP - 3 1982

Thomas J. Kearney
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Defendant Hart appeals from conviction in the Fourth Judicial District Court, Lake County, upon a jury verdict of guilty of sexual assault. We affirm the District Court.

Defendant maintains that the District Court erred in admitting police testimony of several statements allegedly made by defendant prior to his receiving a Miranda warning. See Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d. 694. The State and defendant disagree on whether defendant was in custody when he made the statements and whether defendant's motion to suppress the statements was timely.

In the early morning hours of April 22, 1981, at closing time, defendant was invited to a party at the apartment home of the woman bartender of a bar in Polson. While there (apartment no. 6), he bothered the hostess, who went to a neighboring apartment (no. 3) to ask the men there to help her encourage defendant to leave. In apartment no. 3, were complainant T.A., her boyfriend, her uncle, and her two daughters. The two men went over to the party. When T.A. left her apartment for the party a few minutes later, she left a living room and a bathroom light on for the benefit of her daughters, ages two and three, who were sleeping in the apartment's only bedroom. A male friend was left passed out in a chair in the apartment.

At the party, defendant and T.A. conversed briefly and then defendant left. A few minutes later, T.A. returned to her apartment and noticed the bedroom light was on. Thinking her girls were awake and playing, she called at them to get back into bed. As she reached into the bedroom to turn off the light, someone grabbed her by the arms and yanked her

-2-

into the room as the light went off. T.A. claims she looked right into defendant's face as this happened. Her assailant threw her against the dresser, pushed her to the floor, and then fled from the apartment. T.A. rushed out after him; her screams drew her uncle and boyfriend from apartment no. 6. They saw defendant running and gave chase, but he eventually eluded them. T.A. returned to her apartment before calling police, to check on her daughters. She found them frightened and sobbing. The pants and underpants of the older child were down around her ankles. She told her mother that a man had taken her clothes down, touched her, and "put poop" in her pants. She later indicated to the neighbor woman in the presence of witnesses that the man had touched her private parts with his tongue. Scratches were found on the child's back and buttocks the next day.

T.A. called the police from her neighbor's apartment. Officer Tracy Smith arrived within a minute or two, and was admitted to the neighbor's apartment. There T.A. told Officer Smith that "Gary Hart" had grabbed her and pushed her down when she caught him in her bedroom, and had then eluded his pursuers.

At this point, according to Officer Smith's testimony, the party heard a vehicle start, then stall. Several persons shouted, "that was him" and "go get him." Everyone rushed out toward the brown pickup truck, which Officer Smith recognized as belonging to Gordon Hart. Officer Smith testified that just before they reached the pickup, she told Officer Knickerbocker, who had just arrived as backup, that "the fellow we were after was in the pickup."

Defendant Hart was found lying on the pickup seat, eyes open, head toward the passenger door. Officer Smith asked him what he was doing and, "he said he was passed out, trying to sleep."

-3-

Her testimony follows:

> "Q. Did you say anything further to him at that time? A. I told him that I had a complaint from a woman in Apartment No. 3. I had my back to Apartment No. 6, and I motioned to No. 3 with my right hand, and I said, 'I have a complaint from a woman who says that you were in her apartment.'

> "Q. Did you receive any response to that statement by you? A. He said, 'Yes, I was, but I wasn't in there very long.' He said he was only in there a minute."

Officer Smith then suggested defendant leave the pickup and come sit in the patrol car. The pickup was surrounded by a crowd from the party, cursing, shouting and pounding on the hood and sides. Defendant refused to leave the pickup. Officer Smith said that while defendant was in the pickup she suspected he was involved in something that had happened. The transcript shows:

> "Q. (By Mr. Heinz) At that time was he in custody, had you taken him into custody? A. [By Officer Smith] No, sir.

> "MR. BRIDENSTINE [Counsel for defendant]: Well, he was, of course, not in custody, Your Honor, but he was the focus of her investigation."

Officer Smith also testified that before defendant left the pickup, she asked him how he had gotten dirt on his hands, whether he had fallen down, and he replied, "Yes, those guys were chasing me around the neighborhood."

When Officer Smith suggested defendant leave the pickup and sit with her in the patrol car, he refused, saying that he wanted the police to leave him alone so he could sleep. He became profane and loud in his refusal. Officer Smith then asked her backup, Officer Knickerbocker, to try to get defendant into the patrol car. Defendant testified, "He coaxed me out of the car." Officer Knickerbocker testified that he told defendant "there was two ways we could do it, but he would be coming over to the vehicle." This testimony followed:

-4-

"Q. Wouldn't you say that is a threat of force? A. I don't know.

"Q. You intended to use force if you had to? A. If necessary."

Defendant then agreed to get in the police car. As soon as he did, he was read his rights by Officer Smith. Defendant then reiterated that he had been in the apartment briefly and that "these guys chased him around the neighborhood." Officer Smith drove defendant to the police station, where he was charged with disorderly conduct and booked. The written statements submitted by T.A. and her boyfriend led to defendant's being charged, on April 24, 1981, with sexual assault.

Defendant's story was that he left the party and, after falling over a railing, decided to go to his pickup to sleep. He was awakened by the arrival of the police and the members of the party. He denied making the disputed statements, either before or after he received _Miranda_ warnings. He alleged that he was the victim of a vengeful plot by the children's mother, with whom he had had a hostile encounter some months earlier. These are factual matters, which were decided by the jury, and which were not raised as issues on appeal.

On the first day of trial, August 17, 1981, after the jury had been seated, defendant moved in limine against any testimony offered by the police officers as to statements defendant had made before receiving his _Miranda_ warnings. The State resisted the motion, arguing (1) that it was not timely under section 46-13-301, MCA, governing motions for suppression of confessions or admissions; and (2) defendant was not in custody at the time he made the statements, thus no _Miranda_ warnings were required. The District Court delayed ruling on the motion until foundation was laid during trial, when Officer Smith was testifying. _In camera_

-5-

argument was allowed, to determine whether testimony of defendant's pre-Miranda statements was admissible. Again, both parties argued the timeliness of the motion and the admissibility of the statements on constitutional grounds. The District Court denied defendant's motion and ruled that the statements were admissible. The court did not indicate whether it found the motion to be untimely under section 46-13-301, MCA, or found that defendant was not protected by the Miranda requirements at the time he made the statements.

Defendant was convicted of sexual assault (upon a minor), and was sentenced to Montana State Prison. He appeals his conviction to this Court. The sole assignment of error defendant makes is that the District Court erred by admitting the two statements defendant made to Officer Smith before being given his Miranda warnings.

I.

We find the matter of the timeliness of defendant's motion to suppress to be determinative here.

Section 46-13-301, MCA, states:

> "(1)  A defendant may move to suppress as evidence any confession or admission given by him on the ground that it was not voluntary.  The motion shall be in writing and state facts showing wherein the confession or admission was involuntary.
>
> "(2)  The motion shall be made before the trial unless for good cause shown the court shall otherwise direct.
>
> "(3)  The defendant shall give at least 10 days' notice of such motion to the attorney prosecuting or such other time as the court may direct.  The defendant shall serve a copy of the notice and motion upon the attorney prosecuting."

In State v. Hall (1979), ___ Mont. ___, 600 P.2d 1180, 36 St.Rep. 1780, this Court upheld the District Court's denial of defendant's motion to suppress statements made by him, because the motion was correctly denied on the merits and because the motion was untimely.  In Hall, we found:

"Defendant's motion to suppress was untimely
as it was not made until 8 days before trial.
The applicable statute requires at least 10
days notice. Section 46-13-301, MCA. Here
the defendant waited over 7 months after he
was charged to file his motion and then
filed it only 8 days prior to trial." ___
Mont. at ___, 600 P.2d at 1182, 36 St.Rep.
at 1783, ___.

In State v. Briner (1977), 173 Mont. 185, 567 P.2d 35,
the appeal turned in part upon the timeliness of a motion to
suppress evidence which the defendant alleged was illegally
seized. In Briner, defendant attempted to file various
motions to suppress evidence on the first day of trial after
the jury had been voir dired and passed for cause by the
county attorney. The District Court recessed, took testimony
and heard arguments, then, denied the motions.

The Briner court stated that the question of timeliness
was well defined in Montana, and continued:

"In State v. Gotta, 71 Mont. 288, 290, 229
P. 405, 406, this Court, speaking to the issue
of 'timeliness' stated:

"'* * * one wishing to preclude the use of
evidence obtained through a violation of his
constitutional rights must protect himself
by timely action. If he has had opportunity
to suppress the evidence before trial and has
failed to take advantage of his remedy, objec-
tion to the evidence upon trial will not avail
him.' 71 Mont. 290, 229 P. 406. See also
State v. Gallagher, 162 Mont. 155, 509 P.2d
852." 173 Mont. at 190, 567 P.2d at 37-38.

In the case at bar, we have a defendant, who was aware
from the time of his arrest on April 22, 1981, that he had
made damaging statements. Indeed, according to Officer
Smith, he attempted to retract them while in the holding
cell after his arrest. He did not submit his motion to
suppress those statements until August 17, 1981, almost four
months after he was charged with the sexual assault, on the

first day of trial, after the jury was seated. His motion was oral, rather than written as required under section 46-13-301, MCA. Defendant did not provide the prosecution with the 10 days notice required by that statute and upheld by this Court. Under the circumstances, we find that the District Court properly denied defendant's motion to suppress, regardless of the fact that it did not rule immediately upon the question of timeliness, and did not explain the reason for the denial.

Defendant claims that timeliness is brought in as a "new issue," and is not applicable here, as it was in Briner and Hall, because his motion was not a motion to suppress, but a motion in limine. We are not convinced. The purpose of the motion was to prevent the evidence of defendant's statements to Officer Smith from reaching the jury. The effect of the motion, had the District Court granted it, would have been the same as if the District Court had granted a motion to suppress. Defendant's motion in limine was, in fact, a motion to suppress, and, as such, was subject to the time and notice requirements of section 46-13-301, MCA. When defendant first presented his oral motion to the District Court the first day of trial, the State objected that it was untimely. When, during Officer Smith's testimony, the motion was again presented to the court, the State again argued that the 10 day notice requirement had not been met. The State was raising no new issue when it argued on appeal that the District Court's denial of defendant's motion should be upheld because the motion was untimely. Defendant's argument is without merit.

Under section 46-20-702, MCA, when the record on appeal discloses to this Court that substantial rights of the defendant have been prejudiced due to constitutional error,

we may overturn a conviction. See State v. Austad (1982), ___ Mont. __, 641 P.2d 1373, 1382, 39 St.Rep. 356, 366. That is not the case here. Defendant's statements that he had been in T.A.'s bedroom for a short time, and that people had chased him around the neighborhood, were reiterated by defendant to Officer Smith in the patrol car _after_ defendant had received full _Miranda_ warnings. The evidence would have been before the jury in any case. We do not find that the slight cumulative effect of admitting the pre-_Miranda_ statements warrants consideration of the constitutionality of their admission where, as here, the defendant has waived his right to object to their admission by his failure to timely move for their suppression under section 46-13-301, MCA.

Affirmed.

_____
Justice

We Concur:

_____

_____

_____

_____
Justices