THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HARRY BROUMAS, Defendant-Appellant.

(No. 59661;

First District (4th Division)—November 13, 1974.

James J. Doherty, Public Defender, of Chicago (William D. Trude and Richard D. Kharas, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Thomas D. Rafter, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE ADESKO delivered the opinion of the court:

Following a bench trial in the Circuit Court of Cook County on September 17, 1973, the defendant, Harry Broumas, was found guilty of

reckless conduct (Ill. Rev. Stat. 1973, ch. 38, par. 12—5) and discharging a firearm within the city limits, in violation of chapter 193, section 29 of the Municipal Code of Chicago. He was fined $90 for the reckless conduct charge and $50 for discharging the firearm within the city limits.

Defendant brings this appeal contending that:

> (1) The State failed to prove him guilty beyond a reasonable doubt of reckless conduct; and
>
> (2) When a State statute expressly permits an individual to fire a weapon in self-defense, a municipal ordinance which prohibits such a discharge is, to that extent, invalid.

The factual situation, as presented at trial, was as follows:

Kiriakos Giannopoulos, who had been charged with battery and disorderly conduct but had been acquitted in this same proceeding, testified that on June 26, 1973, he entered a coffee shop at 231 South Halsted Street, Chicago. The defendant, Harry Broumas, was in temporary charge of the shop. Giannopoulos spoke to defendant, saying, "It's not good," following which remark, defendant struck him with an ash tray. Giannopoulos stated that he fell back, with blood dripping on his shirt, and was caught by a friend. Defendant was 78 years old and Giannopoulos was 34 years old.

Defendant left the coffee shop, climbing the stairs to his room above the shop. After this, Giannopoulos started up the same flight of stairs to borrow a clean shirt from a friend, Gus Pappas, who also had an apartment above the coffee shop. At this point he was shot in both legs by defendant who was standing at the top of the stairway.

A different version of the incident was given in defendant's testimony. He stated that Giannopoulos entered the coffee shop, accused him of being a "stool pigeon" and struck him, knocking him to the ground. In self-defense, defendant struck Giannopoulos with an ash tray. As the fight progressed, a man restrained Giannopoulos and told defendant to leave before Giannopoulos killed him.

After the fight was stopped, defendant testified he went up to his room above the coffee shop. Hearing a great deal of noise on the stairs near his room, defendant picked up his revolver. He looked out and saw Giannopoulos climbing the stairs. Defendant thought Giannopoulos was coming to attack him so he fired two "warning shots" to scare him away. The police then arrived at the scene and Giannopoulos was taken to the hospital to have his injuries treated.

Two other witnesses testified for the State. Officer Spaulak stated that he entered the hotel after hearing two shots. He saw defendant standing at the top of the stairs with a gun in his hand. He noted some injuries to defendant's face. Defendant complained of pains in his mid-

section and told Officer Spaulak that he had fired at Giannopoulos as a warning since he thought Giannopoulos was trying to kill him. The remaining witness, a Mr. Siantos, was present in the coffee shop on June 26, 1973. Though he did see defendant hit Giannopoulos with the ashtray, he did not hear any of the conversation and he denied seeing Giannopoulos attack defendant.

It is defendant's initial contention that his shooting of Giannopoulos was justified since he reasonably believed that such action was necessary to prevent his imminent death. Section 7—1 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, § 7—1) provides as follows:

> "A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct *is* necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force which *is* intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent *imminent* death or great bodily harm to himself or another, or the commission of a forcible felony." (Emphasis added.)

In light of the above section, we are of the opinion that defendant was not justified in firing upon Giannopoulos and that the trial court was correct in so ruling.

Defendant claimed that he had been attacked by Giannopoulos first. This was denied by Giannopoulos and refuted by the testimony of the only eyewitness introduced at trial. The trial court obviously rejected defendant's version of the incident in the coffee shop and we find no basis to disagree with that conclusion. However, our focus is not on these events, but on the action of defendant after he had gone up to his room.

Though it was stated by defendant that he fired the shots in self-defense as a warning, he knew or should have known that such action was very likely to result in death or great bodily harm to Giannopoulos. The question then becomes whether or not the use of such force, or deadly force as it is often referred to, was justified in this case.

■■■ It is the province of the trial court as the trier of fact to determine, on the basis of the evidence presented and the facts and the circumstances of a given case, whether the use of force was justified as self-defense. (*People v. Washington*, 27 Ill.2d 104, 108, 187 N.E.2d 739.) The criteria that should be considered in making this determination were noted by Mr. Justice McNamara in *People v. Brumbeloe*, 97 Ill.App.2d 370, 377, 240 N.E.2d 150:

> "The elements justifying the use of force in self-defense are:

1) that force is threatened against a person; 2) that the person threatened is not the aggressor; 3) that the danger of harm is imminent; 4) that the force threatened is unlawful; 5) that the person threatened must actually believe (a) that a danger exists, (b) that the use of force is necessary to avert the danger, (c) that the kind and amount of force which he uses is necessary; and 6) that the above beliefs are reasonable. *People v. Williams,* 56 Ill.App.2d 159, 205 N.E.2d 749 (1965). If a defender has reasonable ground to believe himself in danger or of suffering bodily harm he may protect himself even if he is mistaken and the danger is only apparent. *People v. Lockett,* 85 Ill.App.2d 410, 229 N.E.2d 386 (1967)."

It is quite clear that defendant in the instant case was not justified in firing on Giannopoulos since at the time there was no "imminent" threat to him as noted in section 7—1 of the Criminal Code and in the above case. There is no dispute in the record that the fighting had ceased and that defendant was in his room when he heard someone climbing the stairs. Nonetheless, he left his room, taking a gun with him, and fired after seeing that the man on the stairs was Giannopoulos. Though defendant argues that this action was necessary to prevent an imminent threat to his life, we do not agree.

If we examine the factual situation in *People v. Givens,* 26 Ill.2d 371, 186 N.E.2d 225, relied on heavily by the defendant in his brief as principal support for this argument, the nature of the "threat" in the instant case, or the lack thereof, may be shown by contrast. In *Givens* the defendant, an elderly man, observed a younger man "scuffling" with another man in his rooming house. The young man broke away and followed defendant to his room. He blocked the doorway, preventing defendant from entering, and began to advance on defendant despite repeated warnings. Defendant then picked up a gun and fired. The decision in *Givens* points out that the defendant had shot a man while "repelling [an] invasion of his room" (26 Ill.2d 371, 375) and that the action was motivated by fear of bodily assault as a result of this invasion. In addition it was stated that:

"* * * the fear was enhanced by the physical disparity between the elderly defendant and the robust intruder. Since defendant was in no way physically able to repel the intruder by hand combat, his belief that shooting was the only way to protect himself and to stop decedent was, under the circumstances, not unreasonable." (26 Ill.2d 371, 376.)

Rather than being faced with an invasion of his room and a man advancing upon him in close proximity, defendant in the instant case left

the shelter of his room and shot Giannopoulos without any attempt to warn him to keep away. Giannopoulos had made no attempt to force his way into the room or resume his argument with defendant. There was no need to repel an invasion then or resist an actual assault. Though defendant described the shooting as an attempt to "warn" Giannopoulos, a verbal warning as in *Givens* would have been the appropriate method if such warning was needed. We agree with the finding of the trial court that there was no threat to defendant that would have justified the shooting as self-defense and that defendant's conduct in firing was reckless in the extreme.

Defendant also claims that since he was acting in self-defense that the conviction for discharging a firearm in violation of the municipal ordinance was in conflict with State law (section 7—1 of the Criminal Code) which permits such a discharge if necessary for self-defense. However, defendant's claim is predicated on the initial determination that the discharge was in self-defense. Since we found that it was not so justified, no actual conflict can be said to exist in the instant case and defendant's contention is therefore without merit.

For the foregoing reasons the judgment of the Circuit Court of Cook County is affirmed.

Judgment affirmed.

DIERINGER and BURMAN, JJ., concur.