THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CORNELIUS TOWNSEND, Defendant-Appellant.

Second District   No. 2—93—1302

Opinion filed August 29, 1995.

G. Joseph Weller and Kathleen J. Hamill, both of State Appellate Defender's Office, of Elgin, for appellant.

Michael P. Bald, State's Attorney, of Freeport (William L. Browers and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COLWELL delivered the opinion of the court:

Defendant, Cornelius Townsend, appeals his conviction of aggravated discharge of a firearm under section 24—1.2 of the Criminal Code of 1961 (720 ILCS 5/24—1.2) (West 1992)). The defendant alleges two constitutional violations: (1) that the aggravated discharge of a firearm statute, which makes it a Class 1 felony to discharge a firearm "in the direction of" another person, is unconstitutionally vague, in violation of the principle of due process of law under the United States and Illinois Constitutions; and (2) that the aggravated discharge of a firearm statute carries an unconstitutionally disproportionate penalty, in violation of the principle of due process of law and the Illinois constitutional guarantee of proportionate penalties for criminal offenses. We affirm.

The instant charge of aggravated discharge of a firearm against the defendant arose from an incident that occurred on November 2, 1992, during which shots were fired on a residential street in Freeport. One bullet struck and killed Curtis Brown. Also charged in connection with the incident were Grady Clark, Paris Crawford, Mario Allen, Avery Harrell, and Kelvin Brown. Defendant's case proceeded separately from those of his codefendants.

Terry Everheart, the victim's companion, testified that on November 2, 1992, sometime after 8 p.m., he and Curtis Brown went to Andre McGee's apartment at 916 Galena in Freeport. McGee's apartment was below the apartment of Carlos Evans. Curtis Brown and Evans did not get along. Curtis Brown went into McGee's apartment and phoned Evans. According to Everheart, Curtis Brown wanted "to get everything straight, you know, what was going on, because they was [sic] picking with him all day."

Curtis Brown and Everheart then went outside and stood below Evans' apartment on 916 Galena. Evans came to his upstairs window, but did not exit his apartment. Evans and Curtis Brown argued back and forth. According to a statement made by Everheart to a police officer, Curtis Brown was trying to lure Evans into coming outside to fight. Curtis Brown had a wooden bat in his coat pocket. Everheart testified, however, that at no time during the Brown/Evans argument did Curtis Brown remove the bat from his coat pocket.

At about the same time Curtis Brown was trying to lure Evans to come outside to fight, Kelvin Brown (not to be confused with the victim, Curtis Brown) and Mario Allen were at Grady Clark's house at 607 East Winneshiek. Evans phoned Clark's house and Clark answered the phone. Evans phoned Clark's house between two and five times. After one of the calls from Evans, Kelvin Brown and Allen went to Avery Harrell's house, picked up Harrell and the defendant, and returned to Clark's house. Paris Crawford was also at Clark's house at this time. Evans called Clark again. Kelvin Brown later told the police that he heard Evans screaming on the phone to Clark during one of the phone calls, "these dudes out here, man, they're trying to get in my house." Clark asked, "Who?" and Evans said, "Curtis, Curtis."

Clark brought out two rifles and a handgun after the phone calls from Evans. Clark and Crawford took the rifles, while the defendant took the handgun. Allen, Kelvin Brown, Clark, Crawford, Harrell, and the defendant all got into Kelvin Brown's car and drove to the vicinity of Galena and State, a short distance from the location where Curtis Brown and Evans were arguing. Clark, Crawford, Harrell, and the defendant got out of the car. Allen and Kelvin Brown remained in the vehicle. Clark, Crawford, Harrell, and the defendant were gone for approximately two minutes. Allen testified that while the four men were gone he momentarily stepped out of the car and then heard gunshots. Allen got back into his car after he heard the gunshots. Kelvin Brown testified that he heard about 10 to 12 gunshots while the four men were gone. Clark, Crawford, Harrell, and the defendant returned and got into Kelvin Brown's car and Brown drove away from the scene.

Everheart recalled that sometime during the argument with Evans, Curtis Brown told him to step to the side of the building. As Everheart did so, he saw a car carrying about four people driving across Galena on State Street. Everheart testified that the four people were looking towards the area where he and Curtis Brown were. Everheart then walked up to the corner and saw a "few dudes" ducking and coming towards him and Curtis Brown. Everheart then

returned to Curtis Brown and told him that "some dudes were coming." Everheart testified that it was at that time that shots were fired from the direction where he saw the men ducking. Everheart and Curtis Brown started running after they heard the gunshots. Everheart and Curtis Brown collided with each other and both fell to the ground. Curtis Brown got up and ran towards Chicago Street. Everheart caught up with Curtis Brown and saw him running in circles saying that he was shot. Curtis Brown collapsed beside his car. Curtis Brown died as a result of a gunshot to his back.

Back inside Kelvin Brown's car, Allen heard Crawford say that his gun failed to fire. He also heard the defendant say that his gun got jammed after two or three shots.

The police found bullet holes in a wood fence behind the building where Evans' apartment was located and recovered a spent bullet from the fence. The spent bullet was consistent with the gun Clark carried. The police also found spent bullet casings near the crime scene. The State's firearm expert testified that, in his opinion, one of the casings that police found was fired from the handgun the defendant carried. The firearm expert also testified that, in his opinion, the bullet recovered from Curtis Brown's body was fired by the gun Clark carried.

Defendant was charged with aggravated discharge of a firearm, unlawful possession of a firearm by a felon, and first-degree murder. The aggravated discharge of a firearm and unlawful possession of a firearm charges were severed for purposes of trial and the first-degree murder and aggravated discharge of a firearm charges were tried together before a jury on September 20 through 27, 1993. Defendant was found guilty of aggravated discharge of a firearm and acquitted of first-degree murder. Defendant was sentenced to 12 years in prison on October 28, 1993.

■ Defendant first contends that the aggravated discharge of a firearm statute, which makes it a Class 1 felony to discharge a firearm "in the direction of" another person, is unconstitutionally vague, in violation of the principle of due process of law. The offense of aggravated discharge of a firearm is statutorily defined as follows:

"(a) A person commits aggravated discharge of a firearm when he knowingly or intentionally:

(1) Discharges a firearm at or into a building he knows to be occupied and the firearm is discharged from a place or position outside that building; [or]

(2) Discharges a firearm in the direction of another person or in the direction of a vehicle he knows to be occupied." 720 ILCS 5/24—1.2 (West 1992).

The defendant was charged under subsection 2. The State alleged that the defendant discharged a firearm in the direction of another person, Curtis Brown. Defendant argues that the phrase "in the direction of" is vague. Defendant sets out in his brief a number of examples to illustrate the vagueness of "in the direction of." For instance, the defendant argues that a hunter aiming at prey standing at a 30 degree angle from a fellow hunter could potentially be prosecuted under the statute. Another person who defendant claims could be prosecuted under the statute is an individual who fires a gun knowing that it had a limited range, such as 200 yards, at a person 1,000 yards away. According to the defendant, the phraseology "in the direction of" leaves the determination of the guilt or innocence of the accused up to the subjective, *ad hoc*, or personal conceptions of judges and juries, and leaves the prosecuting authorities free to act in an arbitrary or discriminatory manner in enforcing the provision.

■ We note that all statutes are presumed to be constitutional (*People v. Schwartz* (1976), 64 Ill. 2d 275, 281), and the party challenging the statute has the burden of clearly establishing its infirmity (*People v. Bales* (1985), 108 Ill. 2d 182, 188). Vagueness challenges to statutes which do not involve first amendment freedoms must be examined in the light of the facts of the case in hand. (*People v. Dempsey* (1993), 242 Ill. App. 3d 568, 591.) Thus, a party must demonstrate that the statute is vague as applied to the conduct for which the party is being prosecuted to prevail in a vagueness challenge. The party must show that the statute did not provide clear notice that the party's conduct was prohibited. *People v. Jihan* (1989), 127 Ill. 2d 379, 385.

There are no first amendment rights implicated in the present case. Thus, the defendant lacks standing to raise the constitutionality of the statute as applied to someone else. The defendant must demonstrate that the statute is vague as applied to him. (*Dempsey*, 242 Ill. App. 3d at 591.) Therefore, the issue before us is whether the statute clearly proscribed the conduct in which the defendant engaged in this case.

■ A statute need only be sufficiently certain to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by law. (*People v. Lowe* (1990), 202 Ill. App. 3d 648, 653.) Further, a statute must provide sufficiently definite standards for law enforcement officers and the trier of fact so that its application does not depend merely on their private conceptions. *People v. Fabing* (1991), 143 Ill. 2d 48, 53.

■ In the instant case, the defendant's conduct does fall squarely within the conduct the statute proscribed. The State presented ample

evidence in support of the theory that the defendant and his confederates were engaged in an undertaking intended to culminate in the shooting of Curtis Brown and Everheart. Everheart testified that he saw a car carrying about four people driving across Galena on State Street and that the four people were looking towards the area where he and Curtis Brown were. He saw a "few dudes" ducking and coming towards him and Curtis Brown and then shots were fired. Allen testified that the defendant said his gun got jammed after two or three shots. The State's firearm expert testified that, in his opinion, one of the bullet casings that police found at the crime scene was fired from the handgun the defendant carried.

The defendant has failed to show that the statute does not clearly prohibit the conduct with which he was charged. There is no evidence in the record which refutes the State's theory that the defendant and his comrades intended to shoot Curtis Brown and Everheart. Such conduct is exactly the type of senseless misuse of a firearm that the legislature intended to curb when it enacted the legislation creating the offense of aggravated discharge of a firearm. (See *People v. James* (1993), 246 Ill. App. 3d 939, 948.) As a result, the statute is not vague as applied to the defendant.

The defendant next contends that the aggravated discharge of a firearm statute creates an unconstitutionally disproportionate penalty, in violation of the principle of due process of law and the Illinois constitutional guarantee of proportionate penalties for criminal offenses.

■ The legislature, under the State's police power, has wide discretion to prescribe penalties for defined offenses. (*People v. Bradley* (1980), 79 Ill. 2d 410, 417.) The legislature's power to fix penalties is, however, subject to the constitutional proscription which prohibits the deprivation of liberty without due process of law (*Bradley*, 79 Ill. 2d at 417) and to the constitutional guarantee of proportionate sentences (see *James*, 246 Ill. App. 3d at 946-47). The due process of law clause in the Illinois Constitution provides that "[n]o person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws" (Ill. Const. 1970, art. I, § 2). The guarantee of proportionate sentences is provided for in article I, section 11, of the Illinois Constitution, which states "[a]ll penalties shall be determined *** according to the seriousness of the offense" (Ill. Const. 1970, art. I, § 11).

These constitutional provisions are violated when two identical offenses are punished differently (*People v. Christy* (1990), 139 Ill. 2d 172, 181) or when the penalty for one offense is not as great or greater than the penalty prescribed for a less serious offense (*People v. Wisslead* (1983), 94 Ill. 2d 190, 196).

Defendant argues that the penalties for a violation of subsection (a)(2) of the aggravated discharge of a firearm statute (720 ILCS 5/24—1.2(a)(2) (West 1992)) and subsection (a)(13) of the aggravated assault statute (720 ILCS 5/12—2(a)(13) (West 1992)) are unconstitutionally disproportionate because each offense requires virtually the same elements, yet the offense of aggravated discharge of a firearm is punished more severely than the Class 4 offense of aggravated assault; thus, he concludes two identical offenses are punished differently. The defendant's argument must fail because the offense of aggravated discharge of a firearm is distinct from the Class 4 offense of aggravated assault. The court in *People v. James* (1993), 246 Ill. App. 3d 939, 947, held that the offense of aggravated discharge of a firearm is distinct from the Class 4 offense of aggravated assault because each offense has an element not in common with the other. Specifically, only aggravated discharge of a firearm requires the firearm to be discharged in the direction of another person, and only aggravated assault requires awareness of the offender's conduct. Because aggravated discharge of a firearm and aggravated assault are distinct offenses, the legislature is fully within its power to punish these offenses differently. *James*, 246 Ill. App. 3d at 946.

Defendant alternatively argues that the penalties for a violation of subsection (a)(2) of the aggravated discharge of a firearm statute (720 ILCS 5/24—1.2(a)(2) (West 1992)) and subsection (a)(13) of the aggravated assault statute (720 ILCS 5/12—2(a)(13) (West 1992)) are unconstitutionally disproportionate because the offense of aggravated discharge of a firearm is a less serious offense than aggravated assault, yet aggravated discharge of a firearm is punished more severely than aggravated assault. This argument was rejected in *James*. The *James* court stated:

> "The focus of the offense of aggravated discharge of a firearm is the actual firing of a weapon. In this crime the offender, often without warning or reason, intentionally fires a weapon at or in the direction of individuals. Correspondingly, the focus of the offense of aggravated assault is threat or intimidation. The crime of aggravated assault is committed when the offender threatens to do harm to another. The firing of the weapon, which constitutes an aggravating factor, is incidental to the crime. Furthermore, as noted before, it is not necessary that the weapon be discharged in the direction of a person for the crime of aggravated assault to be committed.
>
> When examined in this manner it seems evident that the two statutes serve different purposes and so the legislature considered different factors in enacting each penalty provision. [Citation.]

There is a rational basis for finding that aggravated discharge of a firearm is a more serious offense than aggravated assault. One might easily conclude that it is more serious for the offender to intend to shoot at a victim, unexpectedly and without notice, than it is for the offender to intend to threaten or intimidate someone, even if the threat involves the firing of a weapon." *James*, 246 Ill. App. 3d at 947.

We adopt this reasoning and hold that aggravated discharge of a firearm is not a less serious crime than aggravated assault. Consequently, it does not violate the constitutional mandates to affix a greater penalty to the offense of aggravated discharge of a firearm. *James*, 246 Ill. App. 3d at 947.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

INGLIS and RATHJE, JJ., concur.