THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID FORNEAR, Defendant-Appellant.

Second District   No. 2—94—0471

Opinion filed August 19, 1996.

RATHJE, J., dissenting.

G. Joseph Weller and Barbara R. Paschen, both of State Appellate Defender's Office, of Elgin, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (William L. Browers and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DOYLE delivered the opinion of the court:

Defendant, David Fornear, was charged in a December 1, 1993, indictment with aggravated battery with a firearm (720 ILCS 5/12—4.2 (West 1992)) and aggravated discharge of a firearm (720 ILCS 5/24—1.2(a)(2) (West 1992)), in that he discharged a pistol and caused injury to Michelle Wilkinson (the victim). On February 2, 1994, a second indictment was filed, which added charges of unlawful use of a weapon (UUW) (720 ILCS 5/24—1(a)(7) (West 1992)) and unlawful use of weapon by a felon (UUWF) (720 ILCS 5/24—1.1 (West 1992)). The UUWF charge was severed for trial. Defendant was tried on the remaining counts before a jury and was convicted of aggravated discharge of a firearm, UUW, and, pursuant to instructions requested by the defense, reckless conduct. He was acquitted of the aggravated battery with a firearm charge. Defendant was sentenced to serve concurrent terms of imprisonment of 13 years for aggravated discharge of a firearm and 5 years for UUW. No sentence was imposed for reckless conduct.

On appeal, defendant raises three issues, namely, (1) whether the jury's verdicts of guilty of aggravated discharge of a firearm and

reckless conduct were legally inconsistent; (2) whether the charge of UUW should have been severed for trial; and (3) whether the aggravated discharge of a firearm statute creates an unconstitutionally disproportionate penalty. The record on appeal reveals the following evidence.

A jury trial began on February 28, 1994. Blake Wilkinson, the victim's nine-year-old son, testified that he and his younger sister lived with his mother and defendant in November 1993. Blake identified the State's exhibits Nos. 18 and 19 as photographs of a shotgun belonging to defendant.

David Walz, an Island Lake police officer, testified that about midnight on November 15, 1993, he monitored an emergency call to the Wauconda fire department, which requested that an ambulance be sent to a house on Route 176 in Wauconda Township. When Officer Walz arrived, he saw a black pickup truck in the driveway with its hazard lights flashing. He saw a man, later identified as defendant, walking toward the ambulance, waving his arms. Officer Walz stated that he intercepted defendant, who was yelling to the ambulance crew to get into the house to help his fiancee, who had accidentally been shot. Officer Walz asked defendant where the gun was, and defendant told him that the gun was in the bedroom where the victim was located. Officer Walz placed the defendant in handcuffs.

Officer Walz testified that, at this point, Deputy Byrne of the Lake County sheriff's department arrived. Officer Walz bent defendant over Deputy Byrne's squad car to search him for weapons and found none. He then locked defendant in the backseat of the squad car.

Mark Abernathy, a Wauconda fire fighter and paramedic, testified that he was in charge of the ambulance crew that answered the emergency call. The crew encountered a woman in the bedroom of the house who was lying on the bed with her legs crossed "Indian style." She was in distress. In answer to their questions, the woman told them that she had been shot twice. The paramedics found only a wound in her shoulder.

Dr. Stephen Rivard, an emergency room doctor at Good Shepherd Hospital, treated the victim on November 15 for her gunshot wound. His examination disclosed there was a puncture wound at the base of the victim's neck and that she was paralyzed. X rays revealed a metal fragment lodged in her lung and bone fragments around the middle of her thoracic spine area. Dr. Rivard opined that the bullet entered either from above her or in front of her, if she had been bending down. Dr. Rivard determined that the shot had come from a

distance greater than two or three feet. Blood tests revealed that the victim's blood-alcohol content was 0.170 and that she had consumed cocaine and amphetamines.

Detective Scott Robin, an evidence technician, testified that, on November 15, 1993, at approximately 1:30 a.m., he arrived at the subject residence. Detective Robin stated that, while searching the bedroom for evidence, he found a .22-caliber semiautomatic pistol lying on the floor. A live round was "chambered in the weapon." He also discovered a magazine in the pistol's vicinity. Detective Robin further found two spent .22-caliber shell casings and two live .22-caliber rounds in the bedroom. A 16-gauge shotgun was also found in the bedroom.

Detective Robin also testified that he discovered what he thought was a bullet hole above the head of the bed in which the victim was found. Detective Robin was unable to retrieve a bullet from this hole. On cross-examination, Detective Robin conceded that he could not conclusively state that this was a bullet hole. Nor could he determine when the hole had been made. He described the hole as approximately six feet above floor level.

Detective John Byrne of the Lake County sheriff's police testified that he spoke to defendant while the latter was locked in Officer Byrne's squad car. Defendant told Detective Byrne that he and the victim had been fighting and that the gun fell off the bed and fired.

Robert Wilson, a firearm and tool mark examiner with the Northern Illinois Police Crime Laboratory, identified the pistol taken from the bedroom floor as a Ruger standard Mark One semiautomatic .22-caliber pistol. He explained that, with such a pistol, the shooter must pull the trigger for each shot fired. Wilson stated that tests indicated that the two spent cartridge casings found on the bedroom floor were fired by this pistol. Wilson further identified the magazine found on the floor near the pistol as a "Ruger standard magazine." He described a magazine as "the portion of the firearm that is filled with live rounds and inserted into the firearm." Wilson stated that, after a bullet is fired from this type of pistol, its spent cartridge casing is expelled from the pistol.

Wilson also testified that he had examined the shotgun taken from the bedroom. He described it as a 16-gauge bolt-action shotgun. Wilson testified that the shotgun's barrel and stock had been shortened. The barrel measured 15 inches in length, and the shotgun measured 26 inches *in toto*.

Detective Robert P. Randall of the Lake County sheriff's department testified that he drove defendant from the Wauconda police station to the sheriff's office in Waukegan. During the ride, defendant

said repeatedly that it was ridiculous that he was being arrested, since he had not been in the room at the time.

The defense rested without presenting evidence. In addition to the charged offenses, the jury was instructed on the included offense of reckless conduct at the defendant's request. As noted above, the jury returned verdicts of guilty as to aggravated discharge of a firearm, reckless conduct, and UUW.

Defendant's motion for judgment notwithstanding the verdict was denied on April 18, 1994. A sentencing hearing was held immediately thereafter. Defendant was sentenced to concurrent terms of 13 and 5 years as to the aggravated discharge of a firearm and UUW charges, respectively. The reckless conduct charge was not addressed by the trial court. The State's motion to nol-pros the UUWF charge was granted. This timely appeal followed.

Defendant first argues that he was found guilty of two separate offenses, aggravated discharge of a firearm and reckless conduct, in which the mental states are mutually exclusive. He contends that the facts do not support a conclusion that his mental state changed between the first gunshot and the second gunshot. Thus, defendant argues that his convictions for these offenses must be reversed and this cause remanded for a new trial.

The State maintains that there is sufficient physical evidence to support the jury's apparent conclusion that the defendant and the victim had some sort of confrontation while she was seated on the bed and that the defendant initially fired a high shot not intended to hit her and then fired a lower shot in her direction. The State maintains that this evidence clearly supports its position that the defendant had two separate acts in mind. Although we affirm the convictions, our decision does not depend on the State's reasoning.

■ Initially, we note that, despite defense counsel's failure to raise this issue at trial or in the post-trial motion, this issue is not waived. Legally inconsistent verdicts present plain error and, thus, are exceptions to the general rule that issues not properly preserved for appeal are waived. *People v. Mitchell*, 238 Ill. App. 3d 1055, 1058 (1992).

■ Legally inconsistent verdicts cannot stand because they are unreliable. At a minimum, such verdicts suggest confusion or misunderstanding on the part of the jury. *People v. Klingenberg*, 172 Ill. 2d 270, 281 (1996). Where inconsistent guilty verdicts are returned, the defendant is entitled to a reversal of the convictions and a new trial on all counts. *People v. Spears*, 112 Ill. 2d 396, 407 (1986). Guilty verdicts are legally inconsistent if they indicate the jury's finding of mutually inconsistent mental states relating to the same conduct.

The mental state of recklessness is legally incompatible with knowledge or intent. *Spears*, 112 Ill. 2d 396.

■ Our examination of the elements of the offenses of reckless conduct and aggravated discharge of a firearm leads to the conclusion that, under the facts of this case, the requisite mental states for these offenses are legally compatible.

"A person commits aggravated discharge of a firearm when he *knowingly or intentionally*:
*****

(2) Discharges a firearm in the direction of another person *****." (Emphasis added.) 720 ILCS 5/24—1.2(a)(2) (West 1992).

"A person who causes bodily harm to or endangers the bodily safety of an individual by any means, commits reckless conduct if he performs *recklessly* the acts which cause the harm or endanger safety, whether they otherwise are lawful or unlawful." (Emphasis added.) 720 ILCS 5/12—5(a) (West 1992).

The issues instructions given to the jury in the present case were consistent with these statutory elements.

Defendant argues that the mental state of intent or knowledge required for aggravated discharge of a firearm is irreconcilably inconsistent with recklessness, which is the mental state required for reckless conduct. Accordingly, guilty verdicts on both offenses, if based on the same conduct with no change in a defendant's mental state, are legally inconsistent. Defendant bases this argument primarily on the supreme court's reasoning in *People v. Spears*, 112 Ill. 2d 396.

Our analysis of this contention necessarily involves an examination of the elements of the crimes in question in conjunction with the fundamental principles of criminal liability. The statutory definitions of the mental states relevant to our discussion are as follows:

*Intent*: "A person intends, or acts intentionally or with intent, to accomplish a result or engage in conduct described by the statute defining the offense, when his conscious objective or purpose is to accomplish that result or engage in that conduct." 720 ILCS 5/4—4 (West 1992).

*Knowledge*: "A person knows, or acts knowingly or with knowledge of:

(a) The nature or attendant circumstances of his conduct, described by the statute defining the offense, when he is consciously aware that his conduct is of such nature or that such circumstances exist. Knowledge of a material fact includes awareness of the substantial probability that such fact exists.

(b) The result of his conduct, described by the statute defining the offense, when he is consciously aware that such result is practically certain to be caused by his conduct.

Conduct performed knowingly or with knowledge is performed wilfully, within the meaning of a statute using the latter term, unless the statute clearly requires another meaning." 720 ILCS 5/4—5 (West 1992).

*Recklessness*: "A person is reckless or acts recklessly, when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense; and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation. An act performed recklessly is performed wantonly, within the meaning of a statute using the latter term, unless the statute clearly requires another meaning." 720 ILCS 5/4—6 (West 1992).

■ These definitions recognize that, depending upon the elements of the particular offense in question, the concept of intent or knowledge may relate to wholly separate aspects of the offense, *i.e.*, intentional or knowing performance of proscribed *acts*, versus intentionally or knowingly accomplishing a *result* or inflicting a specific *consequence*. For example, as illustrated in *Spears*, the crime of attempted murder entails a specific intent to inflict a consequence, the victim's death. It is apparent, therefore, that such intent is inconsistent with the mental state of recklessness, which contemplates that the offender act only with a conscious indifference to the consequences. The two mental states are mutually exclusive. It is an evident contradiction to assume that a defendant could specifically intend to kill his victim, as required for attempted murder, while at the same time act merely recklessly, as required for reckless conduct. Accordingly, assuming that there has been no change in the offender's mental state, a guilty verdict of attempted murder is irreconcilably inconsistent with a verdict of reckless conduct.

Aggravated discharge of a firearm, on the other hand, is a clear example of a general intent crime. Its elements require only that the offender intentionally or knowingly perform the prohibited act, *i.e.*, pull the trigger while the firearm is pointed in the direction of a person. It is not an element of this offense that the offender intend to produce a consequence or accomplish a result, such as infliction of death or injury to the victim.

Reckless conduct is one of several offenses which specify recklessness as the requisite mental state. As noted in the committee comments applicable to the statutory definition of recklessness (720 ILCS 5/4—6 (West 1992)), the supreme court has described this mental state as follows:

"In general, one's conduct is in reckless disregard of the safety of

another if he *intentionally* does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that his conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to the other. Restatement of the Law of Torts, sec. 500; [citations]." (Emphasis added.) *People v. Potter*, 5 Ill. 2d 365, 368 (1955).

Accordingly, an offender who endangers another by reckless conduct intentionally or knowingly performs the endangering acts, such as discharging a firearm. However, as opposed to intending to accomplish a result or knowing that his actions are practically certain to cause that result, the offender acts, instead, with a conscious indifference to the consequences of his intentional acts. For example, a defendant who intentionally throws a bowling ball out the window of a 10-story apartment may be guilty of reckless conduct if the ball endangers or injures a pedestrian on the sidewalk below. This defendant has consciously disregarded a substantial and unjustifiable risk that injury or endangerment would follow from the act. 720 ILCS 5/4—6 (West 1992). Although the defendant has intended to throw the ball, he has not intended the consequences. The defendant, therefore, could not be convicted of the more serious offenses of attempted murder (requiring proof of intent to kill) or aggravated battery (requiring proof of intent to inflict injury).

In the present case, the jury found defendant not guilty of aggravated battery with a firearm, apparently finding insufficient evidence that defendant intended the wounding of the victim. The offense of aggravated discharge of a firearm required only that the jury find that defendant knowingly or intentionally performed the act of firing the pistol in the direction of the victim. Assuming the jurors also found that defendant intentionally fired the weapon with a conscious disregard for whether his actions would endanger or injure the victim, they could have concluded properly that defendant was guilty of both aggravated discharge of a firearm and reckless conduct. Discharging a firearm in the direction of another person, with no intent to kill or wound, can constitute reckless conduct. See, *e.g.*, *People v. Wilson*, 149 Ill. App. 3d 1075, 1076-79 (1986); *People v. Smith*, 76 Ill. App. 3d 191, 195-96 (1979); *People v. Broumas*, 24 Ill. App. 3d 32, 36 (1974); *People v. Thomas*, 1 Ill. App. 3d 139 (1971).

Under the circumstances of this case, we hold that there is no inconsistency between these verdicts.

We note that the trial court correctly arranged the forms of verdict so that defendant could not be convicted of both reckless

conduct and aggravated battery, considering that guilty verdicts on both charges would have been legally inconsistent because, as we have explained, the offenses involve incompatible mental states.

Defendant next argues that the trial court abused its discretion by refusing to sever the unlawful use of weapons count for trial where that charge was unrelated to the shooting incident and served only to inject a fact prejudicial to defendant. Citing *People v. Jeffries*, 35 Ill. App. 3d 991 (1976), defendant argues that the only link between defendant's possession of the illegally shortened shotgun and the shooting incident was that the shotgun was found at the scene of the crime where the .22-caliber gun was found.

■ The trial court possesses the discretion whether to sever charges and order separate trials, and this court will not reverse its determination absent an abuse of discretion. *People v. Duncan*, 115 Ill. 2d 429, 440 (1987).

Section 111—4(a) of the Code of Criminal Procedure of 1963 governs the joinder of criminal offenses at trial. 725 ILCS 5/111—4(a) (West 1992). Joinder is proper where the offenses are similar or part of a single transaction or the same comprehensive scheme. Factors to consider in determining whether offenses are part of the same transaction or scheme include (1) their proximity in time and location; (2) the identity of evidence needed to demonstrate a link between the offenses; (3) whether there was a common method in the offenses; and (4) whether the same or similar evidence would establish the elements of the offenses. *Duncan*, 115 Ill. 2d at 441.

Even where a defendant is forced to trial on disassociated felonies, the trial court's judgment will not be reversed where it is apparent that no prejudice resulted from the misjoinder. *People v. Sockwell*, 55 Ill. App. 3d 174, 177 (1977).

■ In this case, even if we were to find that there was an insufficient connection between the offenses to warrant their joinder, we would nonetheless conclude that no reversible error occurred. Considering the dominant severity of the shooting incident, there is no reasonable likelihood that testimony concerning the presence of the shotgun would have been a material factor in affecting the jury's resolution of the shooting-related charges. Conversely, evidence that defendant possessed the shotgun was clear and uncontradicted. Even if defendant had been granted separate trials, there is nothing to suggest that the results would have been different. See *People v. Patterson*, 245 Ill. App. 3d 586, 591 (1993); *People v. Smith*, 222 Ill. App. 3d 473, 484 (1991). We conclude that, in the context of these particular circumstances, the trial court's refusal to sever the UUW charge does not establish sufficient prejudice to defendant to warrant reversal of the convictions.

■ Finally, defendant argues that the penalty for a violation of subsection (a)(2) of the aggravated discharge of a firearm statute (720 ILCS 5/24—1.2(a)(2) (West 1992)) is constitutionally disproportionate to the penalty for a violation of subsection (a)(13) of the aggravated assault statute (720 ILCS 5/12—2(a)(13) (West 1992)), where the two offenses require virtually the same elements. As the State points out, this court recently rejected this argument in *People v. Townsend*, 275 Ill. App. 3d 413, 419-20 (1995). We adhere to our reasoning in *Townsend* and find defendant's argument to be without merit.

For reasons stated above, we affirm the judgment of the circuit court.

Affirmed.

COLWELL, J., concurs.

JUSTICE RATHJE, dissenting:

I respectfully dissent. Given the skeletal set of facts in the appeal at bar, the verdicts rendered were mutually inconsistent.

The supreme court's opinion in *People v. Spears*, 112 Ill. 2d 396 (1986), is dispositive in this case. See also *People v. Mitchell*, 238 Ill. App. 3d 1055 (1992). In *Spears*, the defendant was convicted of attempted murder, armed violence, and reckless conduct against his wife. These charges were based upon two gunshots. In affirming the appellate court's order of a new trial on all counts, the *Spears* court held that the jury impermissibly concluded that defendant acted intentionally, knowingly, and recklessly at the same time. The *Spears* court stated that "where a claim of inconsistent guilty verdicts involves multiple shots or victims, the question is whether the trier of fact could rationally find separable acts accompanied by mental states to support all of the verdicts as legally consistent." *Spears*, 112 Ill. 2d at 405. *Spears* advised courts of review to pay special attention to the charges against the defendant and the evidence adduced in relation to those charges.

Moreover, the *Spears* court wrote in relevant part:

"In what appears to be an alternative argument, the State contends that the requisite mental states for reckless conduct and armed violence based on aggravated battery—recklessness and knowledge, respectively—are not mutually inconsistent. This argument, as the State itself concedes, is at odds with our holding in *Hoffer* that *recklessness and knowledge are mutually inconsistent culpable mental states.* We find no merit in the State's argument that *Hoffer* should be overruled on the ground that the

mental state of knowledge 'includes' the mental state of recklessness.

The State clarifies what it means by 'includes' in its erroneous assertion that 'a defendant who acts recklessly still acts knowingly.' *The fatal flaw in this argument is that it totally blurs the distinction between the mental state of knowledge and the less culpable mental state of recklessness by assuming that the two invariably coexist.* A defendant acts with a reckless state of mind when he 'consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow.' [Citation.] The statutory definition of recklessness does not contemplate that a defendant be 'practically certain' of the result that his conduct will cause or consciously aware of the 'substantial probability' that a material fact exists as required in the statutory definition of knowledge. [Citation.] Therefore, it does not follow, as the State has urged, that one who acts recklessly also acts knowingly." (Emphasis added.) *Spears*, 112 Ill. 2d at 407-08.

In the instant appeal, the relevant count of the indictment stated in pertinent part:

"[D]efendant *** committed the offense of aggravated discharge of a firearm, in that [he] knowingly discharged a firearm *** in the direction of [the victim]."

As noted above, neither the victim nor defendant testified at trial. Consequently, there was no direct evidence of the shooting which occurred late on November 14. The State's evidence revealed that the victim was shot once, with the bullet entering near the base of her neck. The victim, who tested positive for cocaine and amphetamines and had a blood-alcohol level of 0.17, told paramedics that she had been shot twice. The police found a hole in the wall behind the bed on which the victim was found. Expert opinion indicated that the hole could have been caused by a .22-caliber bullet passing through it, although no bullet was found. Two spent .22-caliber cartridges and a .22-caliber pistol were found in the subject bedroom.

The State's closing argument reflected its theory that defendant had knowingly committed the alleged acts. The prosecution argued that, in order to shoot a gun, one must deliberately pull the trigger, and "[i]t is not an accident when a gun is fired two times." Later, arguing intentional conduct on defendant's part, the prosecutor stated:

"What [defendant] intended to do is what happened. [Defendant] intended to shoot at her; and basically what the facts show in this case is after the first shot, [the victim] ducked, and [defendant] moved up and he shot her."

Also, the State extensively argued a theory that the two shots occurred in rapid succession and that the .22-caliber pistol was then thrown aside.

Based upon this record, the jury could not have rationally found two separable acts accompanied by separate mental states. From the evidence given at trial, there is no way to determine whether the two gunshots were fired in rapid succession or whether they occurred at sufficient intervals to support guilty verdicts on separable acts based on differing mental states. Moreover, to allow the State to construct, with the benefit of hindsight, a theory of the case that it never charged or attempted to prove would be manifestly unfair. *Spears*, 112 Ill. 2d at 405.

When the jury returned the inconsistent verdicts, it was incumbent upon the trial court to send the jury back for "further deliberations consistent with new instructions to resolve the inconsistency." *Spears*, 112 Ill. 2d at 410. The trial court failed to do so, and this cause should be remanded for a new trial on the aggravated discharge of a firearm and reckless conduct charges.