People v. Fornear, No. 81902

NOTICE: Under Supreme Court Rule 367 a party has 21 days after the filing of the opinion

to request a rehearing. Also, opinions are subject to modification, correction or withdrawal at

anytime prior to issuance of the mandate by the Clerk of the Court. Therefore, because the

following slip opinion is being made available prior to the Court's final action in this matter,

it cannot be considered the final decision of the Court. The official copy of the following

opinion will be published by the Supreme Court's Reporter of Decisions in the Official

Reports advance sheets following final action by the Court.

                                    

                 Docket No. 81902--Agenda 9--March 1997.

    THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. DAVID FORNEAR,

                               Appellant.

                       Opinion filed May 22, 1997.

                                    

     JUSTICE HARRISON delivered the opinion of the court:

     Defendant, David Fornear, was charged by indictment in the

circuit court of Lake County with aggravated discharge of a firearm

(720 ILCS 5/24--1.2(a)(2) (West 1992)), aggravated battery with a

firearm (720 ILCS 5/12--4.2 (West 1992)), unlawful use of weapons

by a felon (720 ILCS 5/24--1.1 (West 1992)), and unlawful use of

weapons (720 ILCS 5/24--1(a)(7) (West 1992)) in connection with the

shooting of his fiancee, Michelle Wilkinson. The unlawful use of

weapons by a felon charge was severed for trial, and a jury

returned verdicts of guilty of aggravated discharge of a firearm,

unlawful use of a weapon, and an uncharged count of reckless

conduct (720 ILCS 5/12--5 (West 1992)), which, at defendant's

request, the jury was instructed to consider as a lesser-included

offense of the aggravated battery count. He was acquitted of the

aggravated battery with a firearm charge.

     The trial court sentenced defendant to a 13-year term of

imprisonment for aggravated discharge of a firearm and a concurrent

5-year term for unlawful use of weapons. The reckless conduct

charge was not addressed by the sentencing court. The State's

motion to nol-pros the unlawful use of weapons by a felon charge

was granted. The appellate court, with one justice dissenting,

affirmed. 283 Ill. App. 3d 171. We allowed defendant's petition for

leave to appeal (155 Ill. 2d R. 315), which raises, as its sole

issue, whether the jury's verdicts of guilty of aggravated

discharge of a firearm and reckless conduct are legally

inconsistent.

     The State adduced the following evidence at trial. It was

stipulated that, if called to testify, Colleen Kay would state that

she is employed as a dispatcher by the Wauconda police and fire

departments. At approximately 12:13 a.m. on November 15, 1993, Kay

was on duty when she received a 911 call from a man requesting

rescue services for a person who had been shot. Kay would further

state that all incoming 911 calls are recorded on the dictaphone

tape recorder at her work station, and that State's exhibit No. 2

is a true and accurate recording of the entire telephone

conversation that took place at that date and time. State's exhibit

No. 2 was played for the jury in open court and admitted into

evidence. On the recording, the following colloquy, inter alia, is

heard:

               "KAY: 911, what is your emergency?

               CALLER: My girlfriend was shot.

               KAY: Your girlfriend was shot?

               CALLER: Yeah, I think she was.

               KAY: Where is she?

               CALLER: 27358 Route 176. I'm at a pay phone

          [be]cause we don't have a phone at home.

                                   * * *

               KAY: How do you know she got shot?

               CALLER: She was mad at me and she was gonna shoot me

          and the gun went off and I looked at her chest and

          there's a little bullet thing.

               KAY: Is she conscious?

               CALLER: Yeah, but she's scared she's dying or

          something. Somebody's gotta get there.

                                   * * *

               KAY: What kind of a gun was it?

               CALLER: A 22.

               KAY: Okay.

               CALLER: Okay. I gotta get back there. Send them

          right away please."

     Blake Wilkinson, the nine-year-old son of Michelle Wilkinson,

testified that in November 1993, he and his younger sister lived

with their mother and defendant in Wauconda. On the night of the

shooting, Blake was awakened, went into his mother's room and found

defendant crying and saying: "Don't do this to me." Blake saw his

mother lying on the bed looking up at the ceiling with her mouth

open and her skin "all white." Blake identified State's exhibit

Nos. 18 and 19 as photographs of a shotgun belonging to defendant.

     Officer David Walz, of the Island Lake police department,

testified that about midnight on November 15, 1993, he monitored an

emergency call to the Wauconda fire department requesting that an

ambulance be sent to a house on Route 176 in Wauconda Township.

When Walz arrived, he saw a black pickup truck in the driveway with

its hazard lights flashing. Walz stated that he saw a man, later

identified as defendant, walking toward the ambulance and waving

his arms. Walz intercepted defendant, who was yelling to the

ambulance crew to get into the house to help his fiancee who had

accidentally been shot. Walz asked defendant where the gun was

located, and defendant told him that the gun was in the bedroom

with his fiancee. Walz testified that he then handcuffed defendant

and walked him toward the squad car of Lake County Sheriff's Deputy

Byrne, which had just arrived. Walz bent defendant over the trunk

of the squad car to search him for weapons and, finding none,

locked defendant in the back seat.

     Mark Abernathy, a Wauconda fire fighter and paramedic,

testified that he was in charge of the ambulance crew that answered

the emergency call. The crew encountered a woman in the bedroom of

the house who was lying on the bed with her legs crossed "Indian

style." The woman was in distress, and in answer to their

questions, told them that she had been shot twice. Abernathy stated

that his crew examined the woman and found a single entry wound in

her right shoulder, near the collarbone.

     Dr. Stephen Rivard, an emergency physician at Good Shephard

Hospital, testified that on November 15, 1993, he treated Michelle

Wilkinson for a gunshot wound. Rivard observed that Wilkinson had

a puncture wound at the base of her neck and was paralyzed. A chest

X ray revealed a metal fragment lodged in Wilkinson's left lung and

bone fragments "around the middle of the thoracic spine area."

Rivard opined that the bullet had entered either from above

Wilkinson or in front of her, if she had been bending forward, and

that the shot had come from a distance greater that two or three

feet. Blood tests showed that Wilkinson's blood-alcohol content was

"170 milligrams," and that she had consumed cocaine and

amphetamines.

     Detective Scott Robin, an evidence technician with the Lake

County sheriff's department, testified that he arrived at the site

of the shooting at approximately 1:30 a.m. on November 15, 1993.

Robin stated that, while searching the bedroom of the residence for

evidence, he found a .22-caliber semiautomatic pistol lying on the

floor. A live round was "chambered in the weapon," and a magazine

for a pistol was located several inches away. Robin testified that

he discovered two live .22-caliber rounds on the floor in the same

area as the weapon, and two spent .22-caliber shell casings, one

near the corner of the room on the floor, and a second on top of a

quilt at the foot of the bed. A 16-gauge bolt-action shotgun was

also found in the bedroom.

     Robin further testified that he discovered what he believed

was a bullet hole above the head of the bed where Wilkinson was

found. The hole was 6 feet, 1½ inches above floor level, and the

interior diameter of the hole was approximately 0.23 of an inch,

consistent with a .22-caliber bullet hole. Robin was unable to

retrieve a bullet from the interior wall behind the hole. Robin

stated that although there were additional holes in the bedroom

walls, including nail and BB holes, none were consistent with a

bullet hole. On cross-examination, Robin conceded that he could not

conclusively state that the hole above the bed was a bullet hole,

nor could he determine when the hole had been made.

     Robert Wilson, a firearm and tool mark examiner with the

Northern Illinois Police Crime Laboratory, identified the pistol

taken from the scene as a "Ruger standard Mark One" .22-caliber

semiautomatic pistol. Wilson testified that the pistol had one mode

of firing, a single action, which means that the trigger must be

pulled each time for the weapon to fire. Wilson stated that tests

indicated the two spent cartridge casings found on the bedroom

floor were fired by the Ruger pistol. Wilson described a magazine

as "a portion of the firearm that is filled with live rounds and

inserted into the firearm," and identified the magazine found near

the pistol as a "Ruger standard magazine" which fits that firearm.

Wilson further stated that, after a bullet is fired from this

pistol, its spent cartridge is ejected up and to the right.

     Wilson also testified that he had examined the shotgun taken

from the bedroom and described it as a J.C. Higgins 16-gauge bolt-

action shotgun in working order. Wilson stated that the shotgun's

barrel and stock had been shortened after it left the factory and

that its overall length was 26½ inches, with the barrel measuring

15 inches. On cross-examination, Wilson testified that the Ruger

pistol had a "light trigger pull," and admitted that if the last

time the weapon was fired it was laid to rest with a live round in

the chamber and the safety in the off position, it could be fired

by pulling the trigger without having to pull the bolt back.

     Deputy John Byrne, of the Lake County sheriff's department,

testified that he spoke to defendant while he was locked in Byrne's

squad car at the scene. Defendant was crying and told Byrne that he

was fighting with his fiancee when "the gun fell off the bed, and

went off."

     Deputy Robert Randall, of the Lake County sheriff's

department, testified that after placing defendant under arrest, he

drove defendant from the Wauconda police station to the sheriff's

office in Waukegan. During the trip, defendant repeatedly stated

that it was ridiculous that he was being charged with shooting his

girlfriend, because he had not even been in the room at the time.

The defense rested without presenting evidence.

     The appellate court majority affirmed defendant's convictions,

stating: "Our examination of the elements of the offenses of

reckless conduct and aggravated discharge of a firearm leads to the

conclusion that, under the facts of this case, the requisite mental

states for these offenses are legally compatible." 283 Ill. App. 3d

at 177. Before this court, defendant argues that the appellate

court's finding that the mental states of knowledge and

recklessness were not legally inconsistent is in direct conflict

with this court's opinion in People v. Spears, 112 Ill. 2d 396

(1986). We agree with defendant, and with the appellate court

dissent (283 Ill. App. 3d at 181 (Rathje, J., dissenting)), that

Spears is dispositive.

     In Spears, the evidence presented at trial established that

the defendant fired three shots in rapid succession: one bullet

struck his estranged wife, one hit both her and another woman, and

the third caused no injury. The jury returned guilty verdicts as to

the charged offenses of attempted murder and two counts of armed

violence (based on the great-bodily-harm form of aggravated

battery), and also found the defendant guilty on two uncharged

counts of reckless conduct, which were considered at his request.

In affirming the appellate court's order of a new trial on all

counts, this court held the verdicts represented a legally

inconsistent finding that the defendant acted intentionally,

knowingly and recklessly when he performed the same acts.

     In the instant case, the appellate court, while acknowledging

Spears, reasoned as follows:

               "[A]n offender who endangers another by reckless

          conduct intentionally or knowingly performs the

          endangering acts, such as discharging a firearm. ***

               *** The offense of aggravated discharge of a firearm

          required only that the jury find that defendant knowingly

          or intentionally performed the act of firing the pistol

          in the direction of the victim. Assuming the jurors also

          found that defendant intentionally fired the weapon with

          a conscious disregard for whether his actions would

          endanger or injure the victim, they could have concluded

          properly that defendant was guilty of both aggravated

          discharge of a firearm and reckless conduct." 283 Ill.

          App. 3d at 179.

     However, the argument that the mental states involved herein

are not mutually inconsistent, because the mental state of

knowledge "includes" the mental state of recklessness, was raised

and rejected in Spears. Spears, 112 Ill. 2d at 407-08. As the

Spears court explained: "The fatal flaw in this argument is that it

totally blurs the distinction between the mental state of knowledge

and the less culpable mental state of recklessness by assuming that

the two invariably coexist." Spears, 112 Ill. 2d at 408. We

continue to adhere to the holding of Spears, and its predecessor,

People v. Hoffer, 106 Ill. 2d 186 (1985), that recklessness and

knowledge are mutually inconsistent culpable mental states.

     The Spears court additionally provided the "essential

framework for analyzing the consistency of jury verdicts in the

troublesome context of multiple shots or victims," stating:

               "[W]here a claim of inconsistent guilty verdicts

          involves multiple shots or victims, the question is

          whether the trier of fact could rationally find separable

          acts accompanied by mental states to support all of the

          verdicts as legally consistent. ***

               *** We believe that the substance of the allegations

          charging the defendant, as an unequivocal expression of

          prosecutorial intent [citation], and what the evidence

          showed in relation to those charges, are of particular

          importance in determining whether guilty verdicts could

          rationally and consistently be based upon separable acts

          accompanied by the requisite mental states." Spears, 112

          Ill. 2d at 405-06.

     In the instant case, count I of the indictment stated in

pertinent part: "[D]efendant *** committed the offense of

aggravated battery with a firearm, in that [he] in committing a

battery *** knowingly without legal justification caused an injury

to Michelle Wilkinson by means of the discharging of a firearm in

that said defendant shot Michelle Wilkinson in the chest." Count II

of the indictment charged in pertinent part: "[D]efendant ***

committed the offense of aggravated discharge of a firearm, in that

[he] knowingly discharged a firearm *** in the direction of

Michelle Wilkinson." According to the jury instructions, proof of

the charge of aggravated discharge of a firearm depended on a

finding that defendant knowingly discharged a firearm in the

direction of another person. The aggravated battery with a firearm

charge would be proved if the jury found that defendant knowingly

caused injury to another by discharging a firearm, and the reckless

conduct charge would be proved by a finding that defendant

recklessly performed an act that caused bodily harm to another. The

jury also received an instruction that it might render a guilty

verdict as to aggravated battery or reckless conduct, but not both.

     In its brief, the State argues that the jury herein correctly

found two separate acts accompanied by separate mental states:

               "The first act was the defendant's [knowingly]

          discharging a firearm in the direction of the victim as

          indicated by the bullet hole found six and one half feet

          above the bed: a `warning shot' if you will. The second

          act was the defendant then firing the gun directly at the

          victim, striking her in the shoulder area. *** [T]he

          jurors felt that the defendant, by firing the gun

          directly at the [victim], did so recklessly and caused

          bodily harm in so doing."

     It is true that here, unlike Spears, the indictment charging

defendant and the issues instructions given the jury appear to

charge a separate offense for each action or shot fired by

defendant. However, as in Spears, even assuming arguendo that

defendant's acts were separable, "the record belies any suggestion

that the defendant's mental state changed during the shootings to

support the State's hypothesis." Spears, 112 Ill. 2d at 406.

Because neither the victim nor the defendant testified at trial,

there was no direct evidence of the shooting. Nor was any evidence

presented to suggest that defendant's state of mind varied during

the gunfire, as the State now posits. Indeed, as the appellate

court dissent noted, the State's closing argument reflected its

theory that defendant had acted either knowingly or intentionally

in firing both shots. 283 Ill. App. 3d at 182 (Rathje, J.,

dissenting).

     Disputing defendant's theory of accident, the State argued in

closing that to shoot the .22-caliber pistol, one must deliberately

pull the trigger, and that "[i]t is not an accident when a gun is

fired two times." The State also argued that the two shots occurred

in rapid succession and that defendant's conduct was intentional,

stating: "What [defendant] intended to do is what happened.

[Defendant] intended to shoot at her; and basically what the facts

show in this case is after the first shot, Michelle Wilkinson

ducked, and [defendant] moved up and he shot her." Yet the jury, by

its guilty verdicts, found that defendant acted recklessly

(reckless conduct) and knowingly (aggravated discharge of a

firearm).

     Thus, the State here, as in Spears, is "attempting to justify

guilty verdicts in direct conflict with both its theory of the case

at trial and the evidence it presented in support of that theory."

Spears, 112 Ill. 2d at 405. We respond, as in Spears, that "[i]t

would be manifestly unfair to allow the State, with the benefit of

hindsight, to be able to create separable acts on appeal, neither

alleged nor proved at trial." Spears, 112 Ill. 2d at 405. Where

neither the State's proof at trial nor the jury instructions

distinguished between defendant's intent when he fired the shots,

there was "nothing to alert the jury that the State or the defense

was claiming different mental states as to different shots." See

People v. Mitchell, 238 Ill. App. 3d 1055, 1059 (1992). Therefore,

as the case at bar was presented, we find that the jury could not

have rationally found separable acts accompanied by different

mental states to support both the aggravated discharge of a firearm

and reckless conduct verdicts as legally consistent.

     Having established that the verdicts herein were inconsistent,

we must examine the propriety of the trial court's actions with

respect to those verdicts. People v. Porter, 168 Ill. 2d 201, 214

(1995). "When a jury returns inconsistent guilty verdicts, the

trial judge has a duty to send the jury back for further

deliberations after additional instructions to resolve the

inconsistency." Porter, 168 Ill. 2d at 214; Spears, 112 Ill. 2d at

410. It is improper for a trial court to enter judgment on one of

the inconsistent verdicts and vacate the other, or, as occurred

here, to simply ignore one of the verdicts at the time of

sentencing. "Where inconsistent verdicts are returned, a trial

judge may not usurp the function of a jury by second-guessing

`which of the two verdicts was intended by the jury and which was

a result of some misconception.' " Spears, 112 Ill. 2d at 410,

quoting People v. Almo, 108 Ill. 2d 54, 63-64 (1985). Thus, in the

instant case, the trial court's failure to send the jury back for

further deliberations to resolve the inconsistent verdicts mandates

a reversal and a new trial on the aggravated discharge of a firearm

and reckless conduct charges. See Porter, 168 Ill. 2d at 214-15;

Spears, 112 Ill. 2d at 410. Defendant does not contest his unlawful

use of weapons conviction and, therefore, no retrial is necessary

on this count.

     Because we are remanding this cause for a new trial, we

consider whether the evidence was sufficient to prove defendant's

guilt beyond a reasonable doubt. After thoroughly reviewing the

evidence, we find it to have been sufficient to support the guilty

verdicts. We therefore find that there is no double jeopardy

impediment to a new trial. See Porter, 168 Ill. 2d at 215; People

v. Taylor, 76 Ill. 2d 289, 309 (1979). We note that we have made no

finding as to defendant's guilt that would be binding on retrial.

People v. Jones, 175 Ill. 2d 126, 134 (1997); Porter, 168 Ill. 2d

at 215.

     For the reasons stated, the judgment of the appellate court is

affirmed in part and reversed in part. We reverse the defendant's

convictions of aggravated discharge of a firearm and reckless

conduct and remand the cause to the circuit court for a new trial.

Appellate court judgment affirmed

                                            in part and reversed in part;

                                          circuit court judgment affirmed

                                            in part and reversed in part;

                                                            cause remanded.